**Melba Jean PAGE, Relator,**

v.

**Honorable Charles SHERRILL et al., Respondents.**

**No. B–184.**

Supreme Court of Texas.

May 31, 1967.

Nugent & Haston, Cleo Haston, Kerrville, for relator.

Lee & Lee, Jack Lee, Mason, for respondent.

CALVERT, Chief Justice.

This is an original proceeding in which relator seeks a writ of mandamus to compel the respondent, Honorable Charles Sherrill, Judge of the 112th District Court of Texas, to vacate a temporary child custody order.

On July 7, 1966, the marriage of Melba Jean Page, relator, and William E. Page was dissolved by a decree of divorce entered by the Second 38th District Court of Kerr County, Texas. The custody of the parties' two minor children was awarded to relator.

On September 20, 1966, William E. Page filed a petition in the Second 38th District Court alleging a change of conditions, asserting that relator was unfit to have custody of the children, and seeking a change of custody to his sister and brother-in-law, Maxine and Harry Powell. On October 10, 1966, relator answered plaintiff's petition with special exceptions and a general denial. On January 26, 1967, William E.

Page filed his first amended original petition in which Maxine and Harry Powell joined as plaintiffs.

On March 16, 1967, plaintiffs filed their second amended original petition, alleging that relator was unfit as a custodian and citing acts demonstrating custodial unfitness performed by relator in Kerrville and Fredericksburg, Texas. Alleging that relator was then residing in Alpine, Texas, plaintiffs asserted that "if said children remain [in Alpine] away from friends and relatives * * * and away from their family doctor, * * * because of the habits, attitude and conduct of [relator], the said minors * * * are in danger of suffering irreparable and permanent injuries to their health and * * * it is dangerous for them to be in such condition * * *."

Plaintiffs' petition was presented to Judge Sherrill who had been assigned temporarily to the Second 38th Judicial District. The assignment of Judge Sherrill appears regular, and his right to sit as Judge of the Second 38th Judicial District is not questioned by the parties.

On March 16, 1967, Judge Sherrill issued an order, without notice, commanding the sheriff or any authorized officer in the county where the children were found to take them from the custody of relator and deliver them to Kerrville, Texas, to the Supervisor of Child Welfare who, in turn, was "to place them under the care, custody and control of such person or persons in Kerrville, Texas, who, in his opinion will, care for them to the best interest of said children during the pendency of this suit, or until further order of this court." The order was based upon a finding, made by Judge Sherrill "from the verified allegations of said petition," as follows:

"* * * the Court is of the opinion that the health and welfare of the two minor children, Linda Ann Page and Glenda Ann Page are in danger, under the present circumstances; that it would be to the best interest of the health and welfare of said minors for the present custody to be changed during the pendency of this suit, and there is danger, under the present circumstances, of said children suffering irreparable injury under the present situation."

In the same order, Judge Sherrill commanded the relator to appear in the District Court of Kerr County, Texas, on March 20, 1967, and show cause, if any, why the custody of the two children should not remain as ordered during the pendency of the suit.

On March 17, 1967, pursuant to the court's order, the children were taken from relator who resided in Alpine, Texas, and were turned over to the Supervisor of Child Welfare in Kerrville, Texas.

On March 20, 1967, relator appeared in the District Court of Kerr County and filed a motion to quash the court's order of March 16, 1967. The court proceeded to hear argument on relator's motion to quash. The court then indicated that it was ready to hear evidence on the show cause order of March 16, and plaintiffs' counsel offered to go forward with evidence to substantiate such order. Relator's counsel, however, refused to participate in a hearing on the show cause order, asserting that to do so would constitute a waiver of relator's rights. The court overruled relator's motion to quash. Relator then brought the present mandamus action to vacate the temporary child custody order of March 16.

Relator contends first that a district court has no power to take minor children from their parents without notice. While it is true this power has not been specifically granted, general authority for the exercise of such power is set forth in the Constitution of Texas:

"The District Court shall have * * * original jurisdiction and general control over * * * minors under such regulations as may be prescribed by law." Tex.Const. Art. V, § 8, Vernon's Ann.St.

It was early declared that the foregoing constitutional provision placed jurisdiction over the custody of minors in the district courts and empowered those courts to transfer such custody. See Ex parte Reeves, 100 Tex. 617, 103 S.W. 478 (1907). It has long been recognized that the district courts have broad discretion in determining the custody of children, even to the extent of taking the custody of a minor from its own parents. Legate v. Legate, 87 Tex. 248, 28 S.W. 281 (1894). Moreover, the power may be exercised as an incident to the granting of a divorce, Art. 4639, Vernon's Texas Civil Statutes, or it may be exercised in an independent habeas corpus proceeding. Worden v. Worden, 148 Tex. 356, 224 S.W.2d 187 (1949).

▆▆▆ There would seem to be no room for doubt of the power of a court to enter an order, without notice to the parents, for the temporary custody of a child of parties to a pending suit for divorce. Art. 4639, Vernon's Texas Civil Statutes, confers power on a divorce court to make temporary orders respecting the welfare of children of the parties in the broadest possible language. The article provides:

"* * * The court shall have power, in all divorce suits, to give the custody and education of the children to either father or mother * * * to be determined and decided on the petition of either party; and in the meantime to issue any injunction or make any order that the safety and well-being of any such children may require." [1]

The express grant of power to make any order that the safety and well-being of children may require, carries with it by necessary implication the power to make temporary custody orders without notice. And just as the statutory grant of power to the district courts to adjudicate the custody of children in divorce actions did not preempt their power to adjudicate custody in independent suits, neither does the statutory implied grant of power to make temporary custody orders in divorce suits, without notice, preempt the power of the courts to make such orders, without notice, in independent custody proceedings.

Power of the district court to enter an emergency custody order, without notice, when no valid suit for divorce is pending was upheld in Green v. Green, 146 S.W. 567 (Tex.Civ.App.—Amarillo 1912, writ dism'd). In that case the trial court granted an injunction on petition of a wife, without notice to the husband, commanding the husband to desist from removing their children from the county and ordering him to deliver one of the children to the wife. The court of civil appeals held that it was within the discretion of the district judge to enter such an order as was necessary "to properly guard the welfare of the children until a final hearing could be had on the [custody] issue." Green v. Green has been cited with approval by this court on at least two occasions. See Worden v. Worden, 148 Tex. 356, 224 S.W.2d 187 (1949); Knollhoff v. Norris, 152 Tex. 231, 256 S.W.2d 79 (1953). Cf. Urbach v. Urbach, 52 Wyo. 207, 73 P.2d 953, 113 A.L.R. 889 (1937); Ex parte Badger, 286 Mo. 139, 226 S.W. 936, 14 A.L.R. 286 (1920).

▆▆ Since the district courts are vested with general supervisory control of minors, they are charged with the profound responsibility of protecting their health and safety. Effective discharge of this responsibility under situations of emergency will sometime demand immediate action by the courts. Such action may, by necessity, consist of a temporary taking of a child from the possession of its legal custodian, with or without notice, pending a full hearing. It follows that the district court's power to enter such temporary orders is implied since it is necessarily incidental to the power of general control over minors granted to the district courts by section 8 of Article V of the Texas Constitution.

1. Emphasis ours.

**646**

Relator contends further that the taking of her children without notice was a violation of due process, relying principally upon the authority of Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). In that decision the United States Supreme Court held that failure to notify a divorced parent of the pendency of proceedings for the adoption of his child constituted a deprivation of due process of law. The Court stated that without doubt notice is required where "the result of the judicial proceeding was permanently to deprive a legitimate parent of all that parenthood implies." Moreover, the Court held that the constitutional infirmity resulting from failure to give notice could not be cured by a subsequent hearing on a motion to set aside the decree; particularly since the burden of proof, normally upon the parties seeking the adoption, is shifted in the subsequent hearing to the party who had lost parenthood. This burden, the Court observed, "would not have been imposed upon him had he been given timely notice in accord with the Constitution."

In contrast to *Armstrong*, the present case presents no violations of due process. The court's order to take the children from relator's custody, although without notice, is purely a *temporary* order; it does not purport to be a *final adjudication* of relator's rights. Clearly the order contemplates only a temporary interruption of custody to be followed by proper notice, appropriate pleadings, and a full hearing in which the burden of proof will not be upon relator but upon the parties seeking a change of custody.

We hold that the district court had the power to issue the temporary order of March 16, 1967. Moreover, the court did not abuse its discretion in issuing the order, and neither does the order deprive relator of due process of law.

The writ of mandamus is denied.