**Wanda WIDNER, Appellant,**

**v.**

**Betty Ruth PIXLEY, Appellee.**

**No. 7055.**

Court of Civil Appeals of Texas.

Beaumont.

March 27, 1969.

Motion for Rehearing Overruled
April 17, 1969.

**404**

Everett Lord, W. G. Walley, Jr., Gilbert I. Low, Beaumont, for appellant.

Richard Evans, Kenneth D. Furlow, Beaumont, for appellee.

KEITH, Justice.

This child custody case involving Billy Wayne Widner, Jr., now six years of age, comes to us as an appeal from a judgment entered in a habeas corpus proceeding instituted by the natural mother to regain custody of Billy after the death of his father. On November 21, 1962, appellee procured the entry of a decree of divorce from her husband, Billy Wayne Widner and the decree contained these words:

"Divorce granted plaintiff on payment of Court costs & because she has no finances, custody of minor children presently awarded to defendant, but Court finds Plaintiff is a fit and proper mother and it is ordered she is to see and have all of said 3 children with her at any time she desires."

Subsequently, Betty married Jimmy Pixley and established a home in Jasper County, where her husband is presently employed. She has one child by her present husband and the two older children born of the marriage to Widner have established their home with the Pixleys. Billy, however, remained with his father in Beaumont in the home of appellant and the child's father. There had been no modification of the original decree prior to this suit.

On November 11, 1968, a legal holiday, with the courthouse closed, Betty and her counsel presented to the District Judge a petition for a writ of habeas corpus, the pertinent allegations being as follows: Wanda had possession of Billy, age six years and was not kin to him by blood or adoption; that the natural father of Billy had died November 6, 1968; that she, Betty, was the natural mother of Billy and the marital relationship between Betty and Billy's father was dissolved on November 21, 1962; that Wanda had possession of Billy and since the death of the child's father, had refused to deliver the child to Betty and "the retention of said child by Wanda Widner is illegal." She followed this by an allegation that she had never been adjudicated an unfit mother but upon the contrary had been adjudicated a fit mother.

Seeking an immediate and ex parte order, Betty alleged:

"Betty Ruth Pixley fears that Wanda Widner intends to send Billy Wayne

Widner, Jr. to the State of Tennessee, either November 11, or 12, 1968, and thus needs an immediate Court order directed to the Sheriff of Jefferson County, Texas, to deliver her her said minor child Billy Wayne Widner, Jr."

The prayer was not only for the issuance of an immediate order to deliver the child to her but sought a "notice to show cause as to why said child should not be delivered to Betty Ruth Pixley," and for other necessary orders. At 12:15 p. m., November 11, 1968, the District Judge entered two orders: (a) one commanding the sheriff "to forthwith immediately physically pick up the body and person of Billy Wayne Widner, Jr. and deliver his body and person physically to Betty Ruth Pixley;" and (b) an order requiring Wanda Widner to appear before the 60th District Court at 9:00 o'clock a. m., on November 12, 1968, and show cause "why Billy Wayne Widner, Jr. body and person should not be delivered to Betty Ruth Pixley."

Pursuant to the first order of the judge, the sheriff "picked up" Billy and delivered him to Betty at 2:15 p. m., November 11, 1968. None of the proceedings were lodged in the District Clerk's office until some time the following day, there being no file marks from the Clerk's office appearing upon the photocopies of the pleadings and orders which make up our transcript. Nevertheless, at 9:04 a. m., November 12, 1968, Wanda's counsel filed an original answer and cross-action and procured the issuance of a citation which was served on Betty on November 12. The case was filed in the 136th District Court notwithstanding the fact that the show cause order, according to its terms, was returnable to the 60th District Court.[1]

At 9:20 o'clock a. m., when the court reached the proceedings on the show cause order, it developed that Billy was not in court, Betty's counsel reporting that the child was sick with chicken pox for which reason he had not been produced.

Appellant presented a motion to quash the ex parte order of November 11, 1968, asserting that no pleadings being available to counsel, and not knowing upon what basis the court had entered the order, the order was void unless sworn allegations of fact were first presented to the court showing an emergency demanding immediate action. Next, the motion called to the attention of the court that the proceeding was essentially a custody proceeding, citing Knollhoff v. Norris, 152 Tex. 231, 256 S.W.2d 79 (1953), although an erroneous citation was given in the motion. Next, appellant "assumed" that in the pleadings Betty had alleged that she was the surviving parent of the minor but alleged that such fact "alone does not entitle Petitioner to custody, particularly without a hearing as to how the best interests of the child would be served." Finally, the allegation was made that it would be to the best interest of the child to restore him to Wanda until a hearing could be had on the issue of temporary custody.

The motion to quash, after argument thereon, was overruled, and the hearing was adjourned until the following day at which time the court stated: "I suppose we are now ready to go forward on the merits," whereupon, Wanda's counsel stated to the Court:

"MR. LORD: If the Court please, the only notice that has been served on the respondent is the notice that was served on her on November 11th ordering her to show cause why the child in question the child and deliver it to the petitioner, The Court also signed an order on November 11th, ordering the sheriff to take the child and deliver it to he petitioner, and the sheriff obeyed the orders of the Court and delivered the child. We have asked the Court to quash its orders which directed the sheriff to take such action

1. Apparently this was done pursuant to Subdivision 7, Section 136, Article 199, Vernon's Ann.Civ.St., requiring the Clerk to docket cases alternately upon the dockets of the three Civil District Courts in Jefferson County.

and the Court has overruled our motion, and in our opinion, therefore, the notice which was served ordering the respondent to show cause why the child should not be delivered is now moot and the respondent does not submit to the Court's jurisdiction for any purposes other than with respect to the matters contained in the notice served on her.

"BY THE COURT: What does that mean?

"MR. LORD: It means, I believe, just what I said, if the Court please, that the matter that we were ordered to appear on has become moot."

Following a colloquy between counsel and the court, Wanda's counsel then stated:

"If the Court please, we are not prepared to go forward on a trial on the merits of this case at this time. We have not been ordered to appear here to try a case on the merits at this time."

Thereupon, Betty's counsel accepted the court's invitation to present a witness and when appellant's counsel sought to find out "the purpose of the hearing" the court was then conducting, was advised to "sit by and you may learn."

Thereupon, Betty testified and was tendered for cross examination by appellant's counsel who stated:

"If the Court please, we do not elect to participate in this hearing at this time, and as we stated before, we do not submit by waiver or agreement to try this case on its merits at this time."

Being asked by the Court: " * * * do you ever expect to present any evidence?", counsel for appellant replied that it would be:

"After the proper notice and after our proper investigative procedures are

taken and when this case is regularly set on a Court's docket and a jury has been summoned, we will certainly be ready for trial."

The court, thereupon, entered judgment awarding custody of Billy to his mother, Betty, our appellee here. An appropriate Notice of Appeal having been filed, the case is before us upon two points: (a) the trial court erred in rendering *final* judgment awarding custody to appellee; and (b) the trial court erred in summarily ordering the sheriff to take possession of Billy from appellant and deliver him to appellee, "upon the ex parte application of Appellee, only."

We have made this extensive statement of this unsatisfactory record in order to place in apposition what we believe to be some of the more controlling authorities compelling us to sustain the first point raised.

◼ At the outset, we recognize the rule that upon the death of Billy's father, to whom custody had been awarded in the divorce proceeding, Betty's right to the custody of Billy was "revived" [2] and from that "moment [death of the father] [s]he was legally entitled to the physical possession of the child." [3] However, this rule of law did not authorize the trial court to enter the *final* order from which this appeal is taken. The filing of the writ of habeas corpus simply invoked "the power of the court to adjudicate custody, and was therefore, a suit involving custody as well as possession." (*Knollhoff*, supra, at p. 82).

The trial court had the authority, upon the showing of an emergency requiring immediate action, to enter a *temporary* order relating to the custody of the child. Page v. Sherrill, 415 S.W.2d 642, 645 (Tex.Sup., 1967). But no final adjudication of the custody could be made until after the issuance of citation and a full hearing to de-

2. Peacock v. Bradshaw, 145 Tex. 68, 194 S.W.2d 551, 555 (1946).

3. Knollhoff v. Norris, 152 Tex. 231, 256 S.W.2d 79, 81 (1953). See also Harrel-

son v. Davis, 415 S.W.2d 293, 295 (Tex. Civ.App., 1967, no writ), and cases therein cited.

termine what would be in the best interest of the child involved. *Knollhoff*, supra; *Page*, supra; Dannelley v. Dannelley, 417 S.W.2d 55, 59 (Tex.Sup., 1967).

 The rule is stated in Goodman v. Goodman, 236 S.W.2d 641, 646 (Tex.Civ. App., 1951), opinion by Judge Pope while on the Court of Civil Appeals:

"A permanent order may not be made upon a hearing for a temporary order unless the adversary submits to such procedure, which is not the case before us. The notice to appear for a temporary hearing will not support the final judgment. Until the full hearing is conducted the rights and welfare of this child cannot be known. An adjudication short of a full hearing is not for the best welfare of the child."

Accord: Livingston v. Nealy, 382 S.W.2d 511, 514 (Tex.Civ.App., 1964, error ref. n. r. e.).

The unbroken line of authorities in Texas, some of which are cited herein, shows clearly the error of the trial court in entering the final judgment upon the hearing of the application for a temporary order. Wanda's first point is sustained and the judgment is reversed and the cause is remanded to the trial court for a full hearing to determine what custodial arrangement would be in the best interest of the unfortunate victim of this legal tug of war.

The record support of the order changing the temporary custody of Billy is not at all satisfactory and we have some doubts as to the propriety thereof. We are, however, unwilling to hold that the trial court abused the discretion confided in him "to properly guard the welfare of the children until a final hearing could be had on the [custody] issue." Green v. Green, 146 S.W. 567, 569 (Tex.Civ.App., 1912, error dism.), as quoted in Page v. Sherrill, supra (at page 645 of 415 S.W.2d). In any event, the child has now been in the custody of his natural mother, under the terms of the temporary order, for several months and we are re-luctant to make another change upon the basis of the facts shown in the abbreviated record before us.

Wanda's second point, seeking a reversal of the temporary order, is, therefore, overruled.

The judgment of the trial court awarding the permanent custody of Billy to his mother, Betty, is reversed and the cause remanded for a hearing upon the merits of the custody proceeding.