**Janet Sue HEFLEY, Appellant,**

v.

**Charles R. HEFLEY, Jr., Appellee.**

**No. 12–91–00289–CV.**

Court of Appeals of Texas,
Tyler.

July 30, 1993.

Rehearing Denied Aug. 30, 1993.

Clifton L. Holmes, Longview, for appellant.

Allen Boswell, Athens, for appellee.

HOLCOMB, Justice.

This is a contest between two parties to a divorce over the issue of managing conservatorship of their five-year-old daughter and three-year-old son. On appeal, Appellant raises four points of error. We will reverse and remand.

Appellee ("Mr. Hefley") filed the original suit on March 14, 1990, and was named temporary managing conservator pursuant to *ex parte* orders issued on the date the suit was filed. At the time the suit was filed, Appellant ("Mrs. Hefley") was temporarily in the Terrell State Hospital as a result of a mental break-down. The trial court appointed an attorney *ad litem* for the benefit of the minor children, and the hearing on temporary managing conservatorship was continued until Mrs. Hefley employed counsel. Thereafter, an agreed order of temporary conservatorship was entered wherein Mr. Hefley remained temporary managing conservator and Mrs. Hefley remained possessory conservator with limited visitation.

On June 12, 1990, the attorney *ad litem* filed in behalf of the children a "Motion for Mental Examination." In this motion, he alleged:

1. **This is a child custody case in which the mental health and stability of each of the parties seeking managing conservatorship is placed directly in issue. Furthermore, the relationship of each of the parents to the children is of critical importance in deciding the ultimate question of custody. Movant is entitled to an objective determination of the issues in this case, including the mental state of the parties and the state of mind of the children.**

2. **The children are the real parties in interest in this case, and it is necessary and desirable for a mental examination to be conducted so that the full and complete facts from independent and neutral observers may be presented to the trier of fact.**

The trial court had set this motion for July 13, 1990; however, it was never heard be-

**122**

cause the court in an *ex parte* action on July 10, 1990, allowed the attorney ad litem ("ad litem") to withdraw from the case because he had moved out of the county. The trial court never re-appointed another ad litem. From the record, it appears that neither Appellant nor Appellee objected to this course of action until a motion for new trial was filed.

At the time the ad litem was allowed to withdraw, the record reflects that the trial court had knowledge that Mr. Hefley had spent over eleven (11) years in the Rusk State Hospital where he had been committed after being found *insane* for raping and mutilating a woman and for killing her two small children. He had been released from the hospital in 1975. The court also had knowledge that since his release in 1975, Mr. Hefley had been convicted of involuntary manslaughter, two DWI's, and other offenses involving violence. Additionally, there were allegations of violent behavior made against Mr. Hefley which, that if proven to be true, would have shown that during the marriage, he had physically and mentally abused Mrs. Hefley, sometimes in front of the children. Moreover, there were allegations that he had neglected the children's welfare by failing to give Mrs. Hefley adequate support during their separation.

Also before the court at the time the ad litem moved to withdraw from the case was evidence that Mrs. Hefley had been hospitalized at least twice for mental problems characterized by hallucinations. During some of her hallucinogenic episodes, she may have endangered the physical and emotional welfare of the children. This information was also known to the ad litem, and we can infer that this precipitated his filing the above-mentioned motion. After the ad litem was allowed to withdraw, extensive discovery and pre-trial proceedings were carried out as the parties jockeyed into position for trial, but no hearing was ever had on whether the children's interests were adequately represented when the court allowed the ad litem to withdraw.

The trial on the merits began on April 29, 1991, and ended on May 9, 1991. The evidence reflects that the parties were married in 1981 in Las Vegas, Nevada. It was Mrs. Hefley's first marriage and Mr. Hefley's second. At the time of the marriage, Mr. Hefley earned a living by selling time-shares. Prior to and for several years after the marriage, Mr. Hefley sold time-shares in Las Vegas, San Diego, Galveston, Florida, Georgia, Houston, Dallas, Vermont, and other places. It appears that they lived and worked in more than thirteen (13) different locations during the eight (8) year course of their marriage. During that time, Mr. Hefley was implicated in a federal criminal investigation regarding the fraudulent sale of time-shares. He was granted immunity in return for his testimony against others who were involved. According to Mrs. Hefley, part of her mental problems stemmed from the stress that she was under as a result of these criminal investigations and proceedings, for she too was involved part-time in the time-share sales business as a secretary/bookkeeper. It is undisputed that when they moved to Georgia in 1985, Mrs. Hefley was hospitalized for mental illness for several days. While the record shows that prior to her hospitalization, she had been hallucinating, the evidence conflicts as to the exact cause of her hospitalization. After Mr. and Mrs. Hefley were no longer making a substantial income associated with the time-share business, their financial problems increased, and they moved to Canton, Texas where Mr. Hefley went into the business of selling car polish at locations such as trade fairs. By that time their marital problems had become so great that Mrs. Hefley filed suit for divorce while they were living in Canton, Texas.

Shortly after filing for divorce, Mrs. Hefley and the children went to California, where they remained for approximately four months.[1] While in California, Mrs. Hefley continued to see medical health professionals and receive medication. Mr.

---

1. She had also gone to California after her hospitalization in Georgia.

Hefley admitted that during that time, he did not send any financial support. Then in October of 1989, Mrs. Hefley and the children returned to Texas. Following their return, Mr. Hefley then went to Arizona to pursue his car polish sales at a retirement area. The evidence conflicts as to whether he sent adequate financial support to Mrs. Hefley and the children, but the evidence does show that while Mr. Hefley was in Arizona, Mrs. Hefley suffered a relapse of her mental problems. During this time, Mrs. Hefley either placed her daughter in a bag which was zipped closed, or the child zipped herself in the bag; however, it does not appear from the record that the child was in any actual danger of asphyxiation. Also during this time period, there was an incident where either Mrs. Hefley allowed the children to paint themselves, or she painted them with paint that may have been toxic. This apparently occurred during one of Mrs. Hefley's hallucinogenic phases, and she testified that the problems were a result of insufficient financial funds to adequately care for herself and the children, the stress of the criminal investigation, and the physical and emotional abuse she received from Mr. Hefley.

When Mr. Hefley returned from Arizona, Mrs. Hefley took the children and went to "Decision House," a home for abused women and children, then transferred to Terrell State Hospital, where she was when Mr. Hefley filed for divorce and custody. After being released from the hospital, and before the trial on the merits, it appears that Mrs. Hefley was steadily employed full-time at the Borden's Company in Tyler and remained under the care of mental health professionals. Various witnesses also testified that Mrs. Hefley was a good mother to her children, and that it appeared she had been restored to good mental health as a result of counseling and medication. Mrs. Hefley's expert witnesses testified that her symptoms and history corroborated her testimony as being a battered wife.[2]

At the time of trial, it was undisputed that Mrs. Hefley was living with her fiancé who had a three bedroom brick house and was steadily employed. They planned to be married as soon as the divorce proceedings were over, and her fiancé testified that he was willing to care for Mrs. Hefley and the children.

At the conclusion of the evidence, the trial court granted the divorce and appointed Mr. Hefley as the managing conservator and Mrs. Hefley the possessory conservator with visitation, and directed her to pay $200.00 a month child support.

Following judgment, Mrs. Hefley obtained different counsel, requested findings of fact and conclusions of law, and filed a motion for new trial which was overruled by operation of law. On appeal, Appellant assigns four points of error: (1) the trial court abused its discretion in appointing Appellee as managing conservator because such was not in the best interest of the children; (2) the trial court erred in failing to make diligent inquiry into all circumstances affecting the best interest of the children; (3) the trial court erred in allowing the attorney *ad litem* to withdraw *ex parte* because the nature of the custody dispute required the children to be represented independently; and (4) the trial court abused its discretion in failing to grant a new trial. We will first address Appellant's third and fourth points of error.

In essence Appellant's third point of error, alleges that the trial court abused its discretion in failing to appoint a new ad litem after allowing the initial ad litem to withdraw. The appointment of an attorney ad litem in a suit affecting the parent child relationship is governed by Texas Family Code section 11.10(c), which provides: "The court *may* appoint an attorney for any party in a case in which it deems representation necessary to protect the interests of the child who is the subject matter of the suit." (emphasis added)

2. Mrs. Hefley testified that on one occasion be-

fore she was hospitalized, Mr. Hefley had shot

■ While from the record before us,[3] we strongly believe that the re-appointment of an ad litem would have benefitted the children by focussing the trial court's attention on pertinent facts which might directly have affected their interests, we, however, must bow to the precatory language of Section 11.10(c) and to the great discretion allotted to Texas trial courts in suits affecting the parent child relationship. We have been unable to find any legal precedent for requiring the appointment of an ad litem in a suit where the termination of parental rights is not sought. Moreover, while the factual circumstances in the instant case tempt us to find an abuse of discretion, we are loath to undermine the plain language of Section 11.10(c) by riddling it with judge-made deviations. Currently, the only limitations imposed on the trial court in such cases are that its powers not be exercised arbitrarily, and that it must look in the light of all the circumstances to the best interest of the child. *Page v. Sherrell*, 415 S.W.2d 642, 644–45 (Tex.1967); *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex.1967); *Anderson v. Martin*, 257 S.W.2d 347, 354 (Tex.Civ.App.–Amarillo 1953, writ ref'd n.r.e.). In *Page v. Sherrell*, 415 S.W.2d 642, 644–45 (Tex. 1967), the Texas Supreme Court stated that this broad discretion even extended to allowing the court to take custody of a minor child away from its parents.

Although we believe that the facts in the instant case *cried out* for the re-appointment of an attorney ad litem to represent the children, we cannot say that the trial court abused its discretion by failing to appoint a new ad litem to represent the children. Mrs. Hefley's third point of error is overruled.

■ By her fourth point of error, Mrs. Hefley alleges that the trial court erred in failing to grant her motion for new trial on the basis of newly discovered evidence. After the court entered its final decree and during an extended period of visitation by the children with Mr. Hefley, evidence that

their daughter was sexually abused by a friend of Mr. Hefley's came to the attention of Mrs. Hefley. The matter was investigated by authorities and became the primary subject of Mrs. Hefley's motion for a new trial. At that hearing, Mrs. Hefley testified that Mr. Hefley took the children with him to California in October, 1990. He and the two children were living with Richard and Deborah Snyder. Although Mr. Hefley knew that Richard had previously been in jail, he left the children in Richard Snyder's care. Thereafter, the parties' daughter was examined by a medical doctors who told Mr. Hefley that the child had been sexually abused. The motion for new trial contained evidence that Mr. and Mrs. Hefley's daughter had indeed been sexually abused, that the abuse had occurred as a result of Mr. Hefley leaving the child with a known criminal, and that this abuse had occurred during the time he had taken the children out of the court's jurisdiction.

■ Ordinarily, to be entitled to a new trial on the basis of newly discovered evidence, five elements must be present:

1. Admissible, competent evidence must be introduced showing the existence of the newly discovered evidence relied upon.
2. The moving party must show that he or she had no notice of the existence of this evidence prior to the time of trial.
3. The moving party must show that due diligence had been used to procure the evidence prior to trial.
4. The moving party must show that the evidence is not merely cumulative to that already given and does not tend only to impeach the testimony of the adversary.
5. The moving party must show that the evidence would probably produce a different result if a new trial were granted.

*See Hernandez v. Hernandez*, 703 S.W.2d 250, 252 (Tex.App.–Corpus Christi 1985, no writ). However, in *C. v. C.*, 534 S.W.2d

---

at her four times with a rifle.

**3.** The record before this Court does not contain the statement of facts from the court's *ex parte* hearing on the ad litem's motion to withdraw.

359, 362 (Tex.Civ.App.–Dallas 1976, writ dism'd), the court held that public policy mandates that these rules be relaxed in child custody cases. In these types of cases, when evidence, not offered at trial but presented in support of a motion for new trial, strongly shows that the original custody order would have a serious adverse effect on the welfare of the children, and that presentation of such evidence at another trial would probably change the result, the failure to grant a new trial is an abuse of discretion. *Id.* at 361–62.

In the instant case, we find that the newly discovered evidence meets the criteria of both *Hernandez* and *C. v. C.*. Therefore, the trial court abused its discretion in failing to grant a new trial. Mrs. Hefley's fourth point of error is sustained. Having sustained the fourth point of error, we need not address points one and two.

That portion of the trial court's judgment awarding managing conservatorship of the minor children to Appellee is **reversed and the cause is remanded for a new trial** in accordance with this opinion; in all other respects, the judgment of the trial court is **affirmed.**