# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00590-CV

**W. W., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. D-1-FM-13-001416, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

W.W. appeals from the trial court's temporary conservatorship order, which modified a final divorce decree that had named her the sole managing conservator of her two children, C.W. and L.W., and instead named her temporary possessory conservator.[1] After W.W.'s son C.W. made an outcry that his stepfather had punched him in the face, the Texas Department of Family and Protective Services removed the children from W.W.'s home on an emergency basis and placed the children in foster care. When the trial court heard the Department's ex parte application for temporary orders (the "initial hearing"), instead of naming the Department temporary managing conservator as the Department had requested, the court ordered the children placed with their biological father, Z.W. (the "show-cause order"). At the later full adversary hearing, the trial court

---

[1] We use initials to refer to appellant, her children, and their biological father. *See* Tex. Fam. Code § 109.002(d).

modified the divorce decree and named Z.W. temporary sole managing conservator of the children and W.W. temporary possessory conservator of the children. *See generally* Tex. Fam. Code §§ 156.001-.409 (governing modification of prior orders concerning conservatorship, support, or possession of and access to child); *see also id.* § 262.205 (governing suit by governmental entity for possession of child not in entity's possession).

In six issues on appeal, W.W. challenges the temporary decree of conservatorship on both evidence-sufficiency grounds and various procedural complaints. Having reviewed the record and concluded that W.W. has failed to demonstrate any reversible error, we will affirm.

**BACKGROUND**

This case arises in the context of an emergency removal by the Department of W.W.'s children from their home without a court order. *See id.* § 262.104. The Department removed the children from their home the day before it filed suit for their possession. *See id.* § 262.105. Under these circumstances, the trial court in which suit has been filed is required to hold an initial hearing on or before the first working day after the date the children have been taken into possession or the first working day that the court is available and to render orders that are necessary to protect the physical health and safety of the children. *See id.* § 262.106. After these temporary orders have been issued, "unless the child has already been returned to the parent, managing conservator, *possessory conservator* . . . or custodian entitled to possession," the trial court must have a full adversary hearing to determine whether the Department has presented sufficient evidence to justify keeping the children in the Department's temporary custody pending full litigation of the question of permanent custody. *Id.* § 262.201 (emphasis added). In this case, the trial court had returned the

2

children to Z.W.'s possession after the initial hearing, so it determined that the adversary hearing was governed by the requirements found in Section 262.205, which governs hearings when the children are not in possession of the Department, and Section 153.002, which provides that the best interest of the child shall always be the primary consideration of the court when determining issues of conservatorship and possession.

W.W. and Z.W. had two children together, a son, C.W., and a daughter, L.W.[2] After they divorced, W.W. began living with K.S., and Z.W. remarried. When the Department removed the children from W.W.'s home in connection with this case, C.W. was seven years old and L.W. was five years old.

In April 2014, C.W. was at his father's house for his visitation period when he made an outcry to his stepmother (Z.W.'s wife) that K.S. had punched him in the face. At the time of C.W.'s outcry, K.S. was on a four-year deferred-adjudication felony probation for felony injury to a child based on his having previously choked, punched, and bit C.W., leaving visible bruises and bite marks in January 2013. The Department had sought to terminate W.W.'s parental rights after this abuse of C.W. by K.S., but it had dismissed the case after W.W. completed court-ordered services (the "first CPS case"). At the close of that case, W.W. was not ordered, but was strongly advised by the Department, not to allow the children to have unsupervised contact with K.S.

On the same day that C.W. made his outcry, C.W.'s stepmother reported it to the Department, which began investigating. During an interview with a police detective and the

_____

[2] The facts recited herein are taken from the testimony and exhibits presented at the full adversary hearing.

3

Department's investigator, C.W. repeated that K.S. had punched him in the face. C.W. distinguished this incident of punching from the prior 2013 incident of biting and also told the investigators that he was attending his new school when the recent incident occurred, not the school he had been attending when the 2013 incident occurred. C.W. and his younger sister L.W., who had also reported seeing K.S. hit C.W., were taken to the Center for Child Protection for forensic interviews approximately a week after the Department's investigation began. The police detective testified that C.W.'s statements in the forensic interview remained consistent with his statements to her and the Department's investigator during their interview and "never became more exaggerative, more dramatic. . . . He brought up the last case very briefly and then he brought up this incident; indicated that it happens quite often." The detective testified to her impression that over a period of time, C.W. was hit in more than one episode and that he indicated "this is something that happens quite often and that he knew when [K.S.] was calling him over what's going to happen, and that is what scared him" and led to C.W. having problems sleeping at night because he thought K.S. was going to come in and hit him.

The Department removed the children from W.W.'s home on what it asserted was an emergency basis due to immediate danger on the same day that the forensic interviews of the children and a medical examination of C.W. were conducted. *See id.* § 262.104. It then placed the children in foster care. The day after the Department removed the children, it filed a petition seeking modification of the prior orders of conservatorship and asking for temporary managing conservatorship. *See id.* § 262.105. As mentioned above, at the initial hearing the trial court sua sponte placed the children with Z.W. instead of naming the Department temporary managing

4

conservator. *See id.* § 262.106. At the subsequent full adversary hearing, the trial court named Z.W. temporary sole managing conservator and W.W. temporary possessory conservator, finding that "there was sufficient evidence presented under sections 153.002 and 262.205 of the Texas Family Code and that it is in the best interest of the Children to place the Children with the Children's father, [Z.W.]." This appeal followed.

## ANALYSIS

On appeal, W.W. raises six issues, complaining of both various "due-process" violations and insufficient evidence supporting the trial court's temporary decree of conservatorship. The substance of several of W.W.'s "due-process" complaints is essentially an evidentiary-sufficiency challenge—chiefly that the Family Code required the Department to explore less restrictive options before removing the children from W.W.'s home and to make reasonable efforts to return the children to W.W. after their removal. We first consider W.W.'s complaints of procedural violations and then consider her challenges to the sufficiency of the evidence supporting the trial court's temporary decree of conservatorship, including her "due-process" arguments that the Department did not satisfy the requirements of the Family Code.

### "Due process" at the initial hearing

W.W. asserts that her "due-process" rights were violated because the trial court changed the children's placement sua sponte at the initial hearing in violation of Paragraph 4(b) of the Travis County District Courts' First Amended Standing Order in child-protective-services cases ("DFPS Standing Order"). *See* Travis County District

5

Courts' First Amended Standing Order (October 17, 2007), ¶ 4(b), *available at* https://www.traviscountytx.gov/images/courts/Docs/StandingOrder_FirstAmended_CPS_CivilDistrictCPS.pdf. Paragraph 4(b) provides that the Department may not modify a child's placement that has been previously approved by the trial court, except in an emergency, without first providing the child's attorney and guardian ad litem (if one has been appointed) with three days' notice. *See id.* W.W. argues that the trial court violated Paragraph 4(b) because (1) there was no emergency at the time of the trial court's order because the children had already been removed from her home and (2) notice was not provided as required by Paragraph 4(b).

Paragraph 4(b) of the DFPS Standing Order does not apply in this case because the Department removed the children from W.W.'s home under color of its authority to remove children on an emergency basis to avoid immediate danger, which is an emergency modification of placement that is instead governed by Paragraph 4(c). *See id.* at ¶ 4(c); *see also* Tex. Fam. Code § 262.106 (governing initial hearing after taking possession of child in emergency without court order). "Emergency" is defined in Paragraph 4(c) as "(1) an immediate danger to the physical health or safety of the child; or (2) an imminent, substantial risk of harm to the child or involving the child." *See* DFPS Standing Order at ¶ 4(c). The Department removed the children from W.W.'s home on an emergency basis on the same day that it conducted forensic interviews of the children and a medical examination of C.W. The day after the children were removed, the trial court heard the Department's application for temporary orders as required under Paragraph 4(c) of the DFPS Standing Order, which governs emergency modifications of placement. *See* DFPS Standing Order

6

at ¶ 4(c); *see also* Tex. Fam. Code § 262.106(a). We conclude that Paragraph 4(c) governed the initial hearing in this case.

Paragraph 4(c) provides that (1) in the event of an emergency, the Department may modify a previously approved placement without first obtaining approval of other parties or the court; and (2) if an emergency modification of a child's placement occurs, the Department must seek leave of the district court to approve the change in placement not later than three business days after the emergency modification if the child has no attorney or guardian ad litem. In this case, the hearing was held ex parte, which is specifically permitted by the Family Code. *See* Tex. Fam. Code § 262.106(b). Paragraph 4(c) likewise does not contain any notice requirement related to the subsequent request by the Department for leave of court to approve the emergency placement. *See* DFPS Standing Order at ¶ 4(c). Consequently, we conclude that neither the local rule nor the statute was violated based on W.W.'s lack of notice of the initial hearing. And to the extent that W.W. is complaining that the absence of notice gives rise to some "due-process" violation beyond this, we observe that the show-cause order contemplated "only a temporary interruption of custody to be followed by proper notice, appropriate pleadings, and a full hearing." *Page v. Sherrill*, 415 S.W.2d 642, 646 (Tex. 1967). The order did not violate due process of law. *See id.*

Finally, to the extent W.W.'s complaint is that the trial court sua sponte placed the children with their father, as opposed to some other caregiver, we find no reversible error. At the hearing, the trial court was charged with rendering "orders that are necessary to protect the physical health and safety" of the children. Tex. Fam. Code § 262.106(a). The Department presented evidence in the form of a sworn affidavit by the Department's investigator. *See id.* § 262.106(b)

7

("[P]roof may be by sworn petition or affidavit if a full adversary hearing is not practicable."). The affidavit included allegations related to C.W.'s 2014 outcry, K.S.'s prior conduct, W.W.'s denial that physical abuse was occurring, and W.W.'s pattern of continuing to leave the children unsupervised with K.S. despite K.S.'s prior conduct. Based on this proof, the trial court issued the show-cause order, which directed the parents to appear at a show-cause hearing twelve days later to determine whether the Department should be named temporary managing conservator. The order also placed the children with their father, who was already a possessory conservator under the final divorce decree. Nothing in either the DFPS Standing Order or Section 262.106 precluded the court from placing the children with a possessory conservator instead of the Department at the initial hearing.[3] Having determined that the initial hearing was conducted in accordance with the Family Code and the Travis County District Courts' local rule, we overrule W.W.'s fifth issue.

### "**Due process**" at the adversary hearing

After the show-cause order was issued, W.W. requested a full adversary hearing under Family Code Sections 262.201 or 262.205. *See id.* §§ 262.201 (requiring full adversary hearing no later than 14th day after date child is taken into possession by governmental entity unless extension granted or child has already been returned to person entitled to possession and temporary order has been dissolved), .205 (governing suits by governmental entity to obtain possession of child not already in its possession). At the hearing, W.W. was represented by counsel, as were K.S., Z.W.,

---

[3] In fact, if the initial hearing is not timely held, the statute contemplates that "the child shall be returned to the parent, managing conservator, *possessory conservator*, guardian, caretaker, or custodian *who is presently entitled to possession* of the child." Tex. Fam. Code § 262.106 (emphases added).

8

and the children, and the court heard testimony from W.W., K.S., and Z.W., in addition to the police investigator, the Department's investigator, and a CASA supervisor.

W.W. contends that her "due-process" rights were violated when conservatorship, visitation, and child support were changed at the adversary hearing because the trial court should have applied a "totality of the circumstances" analysis to determine that C.W.'s "uncorroborated" outcry and W.W.'s prior conduct in past CPS cases did not suffice to support the children's removal from her home, relying on *Gates v. Texas Department of Protective & Regulatory Services*, 537 F.3d 404 (5th Cir. 2008). The test applied by the Fifth Circuit in *Gates* is not applicable here. There, the Fifth Circuit was determining whether the Fourth Amendment rights of children seized from their homes had been violated. *See id.* at 427-30. W.W. has not raised a Fourth Amendment challenge on the children's behalf here. We will consider W.W.'s assertion that C.W.'s outcry and W.W.'s prior conduct were insufficient to support the order together with her other challenges to the sufficiency of the evidence. We overrule W.W.'s sixth issue.

**"Due process" related to removal of the children**

In her third issue, relying on Family Code Section 262.1015, W.W. asserts that the Department violated her "due-process" rights by removing the children from her home without first exploring alternatives to removal, such as removal of K.S. from the children's residence or placement with a family member of K.S.'s who was approved for placement during W.W.'s first CPS case.[4] W.W. argues that Section 262.1015 required the Department to explore the alternative

---

[4] W.W. provides no legal authority to support her argument that her "due-process" rights were violated because the Department did not place the children with K.S.'s relative who had been

9

option of removing K.S. from her home instead of removing the children. However, the plain language of Section 262.1015 provides the Department with discretion to make such a determination:

> *If the department determines* after an investigation that child abuse has occurred and that the child would be protected in the child's home by the removal of the alleged perpetrator of the abuse, the department shall file a petition for the removal of the alleged perpetrator from the residence of the child rather than attempt to remove the child from the residence.

Tex. Fam. Code § 262.1015 (emphasis added). In this case, the Department determined that an immediate danger to the children existed in W.W.'s home, based on C.W.'s outcry and on the Department's post-investigation concerns that physical abuse had continued after the first case, that W.W. had continued to be unprotective of the children despite the findings in the previous case, and that she was leaving the children unsupervised with K.S. Thus, it removed the children without a court order.

While the Family Code does give the district court "broad authority to protect children short of separating them from their parents and placing them in foster care," *In re Texas Dep't of Family & Protective Servs.*, 255 S.W.3d 613, 615 (Tex. 2008), in a case in which removal has already occurred, the Code only requires the court to find "sufficient evidence to satisfy a person of ordinary prudence and caution that: . . . reasonable efforts have been made to prevent or eliminate

---

approved for placement with the children during the first CPS case. As we explain, the Family Code provides the Department with discretion to determine whether the children's removal from the home is necessary, *see* Tex. Fam. Code § 262.104 (allowing Department to take possession of child without court order), and also provides the district court with the power to subsequently review the Department's actions, *see, e.g.*, *id.* §§ 262.105, .107, .201, .205.

the need to remove the child[ren] from the child[ren]'s home." Tex. Fam. Code § 262.205(b)(1); *see also id.* § 262.107(a)(3) (at initial hearing court must be satisfied that reasonable efforts, "consistent with the circumstances and providing for the safety of the child," were made to prevent or eliminate need for removal of child taken in possession without court order). Due process does not require the Department or the district court to do more than the Family Code requires, and therefore, we overrule W.W.'s third issue. To the extent that W.W.'s argument can also be construed as a challenge to the sufficiency of the evidence supporting the trial court's implied finding under Section 262.205(b)(1) that the Department made reasonable efforts to prevent or eliminate the need to remove the children from W.W.'s home, we will consider that assertion together with her other challenges to the sufficiency of the evidence supporting the conservatorship order.

In her fourth issue, W.W. similarly argues that her "due-process" rights were violated when the Department failed to make reasonable efforts "to enable the child to return home," relying on Family Code Section 262.201(b)(3) and asserting that the Department did not present sufficient evidence under Section 262.201(b)(3) to support that it made reasonable efforts to return the children to her after their removal. The Department, however, contends that Section 206.201 does not provide the applicable standard here because the children had already been placed with their father, making Section 262.205 the section that governed the full adversary hearing in which the Department sought to remove W.W. as sole managing conservator.[5] *Compare id.* § 262.201

---

[5] The Department argued at the adversary hearing that because W.W.'s children with Z.W. had been returned to their father and the Department was no longer seeking custody of them, the hearing for those children was "a temporary orders hearing under [Chapter] 153 [of the Family Code in which] the standard is preponderance of the evidence and . . . the issue to be resolved is best interest [of the children]." The adversary hearing concerned not only W.W.'s children with Z.W.,

11

(establishing requirements for full adversary hearing when child has not been returned to parent entitled to possession and temporary order has not been dissolved) *with id.* § 262.205 (establishing requirements for hearing in suit by Department requesting possession of child). After argument by counsel at the hearing about whether the hearing had been conducted under Chapter 153 or Chapter 262, the trial court stated in the temporary decree of conservatorship its finding "that there was sufficient evidence presented under sections 153.002 and 262.205 of the Texas Family Code and that it is in the best interest of the Children to place the Children with the Children's father, [Z.W.]." Accordingly, we construe W.W.'s fourth issue as challenging the sufficiency of the evidence supporting the trial court's implied finding under Section 262.205(b)(2) that "allowing the child to remain in the home would be contrary to the child's welfare," and we will consider it together with her other challenges to the sufficiency of the evidence supporting the temporary conservatorship order.

### Sufficiency of the evidence supporting the temporary conservatorship order

In her first two issues, W.W. asserts that the evidence is factually and legally insufficient "to support the Department's removal of the children from W.W." At the hearing, the trial court considered whether to remove W.W. as sole managing conservator under Family Code Sections 153.002 and 262.205. W.W. frames her evidentiary challenge only in terms of whether the

---

but also her child with K.S., who remained in the Department's custody and had been placed in foster care with paternal relatives at the time of the adversary hearing, so the Department argued the hearing for that child's possession was a Chapter 262 hearing. In its order related to C.W. and L.W., the trial court found that sufficient evidence had been presented under both sections 153.002 and 262.205.

Department presented sufficient evidence to support a statutory basis for removal, asserting that C.W.'s "uncorroborated" outcry and W.W.'s past conduct were insufficient. W.W. does not assert that the Department failed to show either that there had been a material change in circumstances or that modification would be in the best interest of the children. *See id.* §§ 153.002 (best interest of child shall always be court's primary consideration in determining conservatorship issues), 156.101(a)(1)(A) (establishing grounds for modification of conservatorship order). Accordingly, we only address whether the Department presented sufficient evidence to satisfy the requirements of Section 262.205. *See id.* § 262.205; *see also In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (conservatorship decisions are governed by preponderance-of-the-evidence standard).

Because "[w]e give wide latitude to a trial court's decision on custody, control, possession, and visitation matters," we review a trial court's conservatorship determinations for abuse of discretion and may reverse "only if the decision is arbitrary and unreasonable." *In re J.A.J.*, 243 S.W.3d at 616 (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)); *see also Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam) (trial court abuses its discretion when it acts without reference to any guiding rules or principles). When we review conservatorship modification under an abuse-of-discretion standard, legal and factual sufficiency are not independent grounds of error; instead, they are relevant factors in deciding whether the trial court abused its discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). When determining whether the trial court abused its discretion, we consider (1) whether the trial court had sufficient information upon which to exercise its discretion, i.e., the traditional sufficiency review, and (2) if it had sufficient information, whether the trial court erred in its application of discretion.

13

*Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.); *see Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex. App.—El Paso 1998, no pet.).

When, as here, no findings of fact or conclusions of law were requested or filed, it is implied that the trial court made all the findings necessary to support its judgment. *Worford*, 801 S.W.2d at 109. We will uphold its judgment on any legal theory supported by the evidence. *Id.* An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). Furthermore, a trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the court's decision. *Coburn*, 433 S.W.3d at 823. The trial judge is in the best position "to observe and assess the witnesses' demeanor and credibility, and to sense 'the forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Therefore, we defer to the trial court's resolution of underlying factual issues and any credibility determinations that may have affected those resolutions, and we may not substitute our judgment for the trial court's judgment on these matters. *George v. Jeppeson*, 238 S.W.3d 463, 468 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Section 262.205 provides as follows:

> After the hearing, the court may grant the request to remove the child from the parent, managing conservator, possessory conservator, guardian, caretaker, or custodian entitled to possession of the child if the court finds sufficient evidence to satisfy a person of ordinary prudence and caution that:
>
> (1)    reasonable efforts have been made to prevent or eliminate the need to remove the child from the child's home; and

14

> (2) allowing the child to remain in the home would be contrary to the child's welfare.

Tex. Fam. Code § 262.205(b). Taking the requirements in order, we return to W.W.'s argument that the Department did not make reasonable efforts to prevent or eliminate the need to remove the children from W.W.'s home. *See id.* § 262.205(b)(1). The Department's investigator attested in the affidavit submitted in connection with the initial hearing that when she first interviewed W.W. after C.W.'s outcry, W.W. indicated that she still does not believe that K.S. abused C.W. the first time and that she wanted to know why C.W. "sees their life differently than how their life really is." W.W. admitted at the hearing that she continued to allow K.S. "minimal" unsupervised access to the children against the Department's advice, despite the fact that the first suit had been based on K.S.'s abuse of C.W., leading to K.S.'s pleading guilty to criminal charges. W.W.'s disbelief of C.W. led the Department to be concerned about the children's safety if they remained in her home.

Further evidence was presented at the full adversary hearing related to the Department's efforts to put a safety plan in place for the children. The Department's investigator testified that W.W. at first refused to agree to a safety plan until she retained legal counsel. Then she and K.S. stated they would agree to a safety plan that prohibited unsupervised contact between K.S. and the children and discussion of the allegations with the children, but they ultimately did not sign it because the Department would not agree that the Department and law enforcement could not come to speak to the children.[6] They also refused to consent to forensic interviews of the children and a

---

[6] W.W. testified that they signed a safety plan, but abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978).

medical examination of C.W. by the Dell Children's Hospital CARE team, which specializes in examining children who may have been abused. Although W.W. had C.W. examined by his pediatrician, she did not sign a release to allow the pediatrician to talk to the Department. The Department had to get a court order to have the children forensically interviewed and to have the medical examination performed at Dell.

After the interviews, the investigator contacted W.W. again and asked her to place the children out or agree to a safety plan and she again refused to agree to anything without talking to legal counsel. However, the investigation had been underway for a week at this point, and she still had not retained counsel. W.W. requested that instead the children be allowed to remain in the home and K.S. would leave. The Department's investigator explained to her that the Department had safety concerns with her ability to protect the children because she refused to have K.S. leave the home after the last case and because she did not believe C.W. then or when he made his outcry this time. W.W. did not offer to have the children placed with the relative that they had stayed with during the first CPS case until after the emergency removal of the children had occurred. Considering this substantive and probative evidence, we conclude that the trial court did not abuse its discretion because there was evidence sufficient to satisfy a person of ordinary prudence and caution that the Department made reasonable efforts to prevent or eliminate the need to remove the children from W.W.'s home. *See id.*; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 828 (Tex. 2005); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Much of the evidence supporting the Department's original decision to remove the children from W.W.'s home also supports the trial court's implied finding that allowing the

16

children to remain in W.W.'s home would be contrary to the children's welfare. *See* Tex. Fam. Code § 262.205(b)(2). The evidence related to W.W.'s belief that C.W. had not been hit, her unwillingness to participate in the Department's investigation, and her refusal to have K.S. leave the home before the Department was ready to execute the children's emergency removal is all relevant to that finding. In addition, the trial court heard evidence from the police detective and the Department's investigator about the emotional effect on C.W. of K.S.'s abuse and also watched the videos of C.W.'s and L.W.'s forensic interviews.

The police detective who first interviewed C.W. with the Department's investigator testified that C.W. told her when K.S. gets mad at him, he does not feel safe and that he had not told his mother about K.S. hitting him because she would tell him he was lying. C.W. described his perfect life as not being bullied at home. Both the detective and the Department's investigator commented that C.W.'s demeanor during his interview was that he was very distressed when talking about being hit—his head was lowered and he said he wanted to cry. During both the police interview and his forensic interview, C.W. stated when asked about getting hurt at home, "I like to keep that inside my head."[7]

The trial court also heard evidence from other witnesses from which it could have concluded that remaining in W.W.'s home would be contrary to the children's welfare. When asked at trial about her feelings for K.S. and whether she would continue to keep K.S. out of her home even if she never knows exactly what happened to C.W., W.W. stated "I am a logical person who can see

---

[7] In connection with a discussion of what kind of therapy C.W. would be required to participate in, the trial judge commented on being struck by "how sad C.W. is that his mother doesn't believe him" after viewing the video of the forensic interview.

17

that if someone is saying they're being hit, but there's no signs of that, then there—then someone is not being hit." She further indicated that based on C.W.'s allegations, she would expect to have seen or heard something to alert her to K.S.'s abuse.[8] The trial court also heard testimony from the CASA supervisor that CASA had serious concerns about W.W.'s ability to be protective of the children even if K.S. was not in the home. CASA also had concerns about C.W.'s emotional safety if he were to be placed with W.W. and recommended that C.W. receive significant therapy with a trauma-focused therapist, as well as C.W. and W.W. attending therapy together. The Department's investigator also testified to her opinion that if the children were to be returned home, they would be at risk for continued physical abuse and W.W. did not have the ability to keep them protected.

W.W. contends that the "outcry of a seven year old without any corroborating evidence" is factually and legally insufficient to support removal of W.W. as managing conservator, but she provides no legal authority in support of this argument. Moreover, L.W. corroborated that K.S. had punched C.W. in the face. The trial court acknowledged "that there's some inconsistencies in [L.W.]'s recitation and [C.W.]'s," but it ultimately found "[C.W.]'s testimony to be credible." In addition, we note that the testimony of a single credible witness is sufficient to support termination of parental rights, which is subject to a heightened standard of proof as compared to modification of conservatorship. *See In re E.A.G.*, 373 S.W.3d 129, 140-43 (Tex. App.—San Antonio 2012, pet. denied) (upholding termination based on credible testimony of single witness);

---

[8] W.W. also argues that past parent conduct alone is not a sufficient statutory basis for removal, but W.W.'s continuing disbelief of C.W. is indicative that she might not continue to keep K.S. out of her home.

*see also In re J.A.J.*, 243 S.W.3d at 616 (contrasting standards for termination and modification of conservatorship order).

W.W. also argues that because there was no visible injury to C.W. and no adult saw any injury, the evidence is factually and legally insufficient. C.W. told the police detective and the Department's investigator, as well as the forensic interviewer, that he had no mark from the punch. The police detective testified that a child can be physically abused without the abuse leaving a physical mark. Moreover, the Department's investigator testified that C.W.'s evaluation at Dell did not occur until 11 days after C.W.'s outcry. The Dell CARE team informed the Department's investigator that it was not surprising that no injuries were found given the amount of time that had passed since the outcry.[9]

We conclude that the Department presented some evidence of a substantive and probative character that supported the court's decision. *See Coburn*, 433 S.W.3d at 823. Consequently, the trial court did not abuse its discretion because there was evidence sufficient to satisfy a person of ordinary prudence and caution that allowing the children to remain in W.W.'s home would be contrary to their welfare.[10] *See* Tex. Fam. Code § 262.205(b)(2); *see also City of Keller*, 168 S.W.3d at 828; *Cain*, 709 S.W.2d at 176. Therefore, we overrule W.W.'s first, second, and fourth issues.

---

[9] We note that K.S. told the Department's investigator that C.W. had had a bruise on his face within the month before the interview that the family believed came from a soccer game.

[10] In addition, we note that the Department ultimately placed the children with their noncustodial parent, which was proper under the statute. *See* Tex. Fam. Code § 262.205(e)(1).

**CONCLUSION**

Having concluded that sufficient evidence supports the trial court's order modifying conservatorship and that W.W.'s "due-process" rights were not violated, we affirm the trial court's order.

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed: March 13, 2015