Karen D. SMITH, Appellant,

v.

Jerry W. SMITH, Sr., Appellee.

and

In the Interest of H.T.S., Z.C.S., and E.C.S.

No. 10–00–00409–CV.

Court of Appeals of Texas, Waco.

June 23, 2004.

Rehearing Overruled Aug. 17, 2004.

Marnie Ann McCormick, Clark, Thomas & Winters, Austin, for appellant.

Robert York, Moe & York, P.L.L.C., Corsicana, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Karen D. Smith (Karen) appeals from the trial court's judgment of divorce awarding managing conservatorship of her three children to Jerry W. Smith, Sr. (Jerry), dividing their community estate, and ordering her to pay child support. Karen raises five issues: (1) the exclusion of evidence as to whether she had separate property and the finding that she had none; (2) whether the division of the community estate was "just and right"; (3) the designation of Jerry as sole managing conservator of the couple's three children; (4) the failure to appoint a guardian ad litem to represent the children; and (5) the amount of child support she was ordered to pay. Because we find no reasonable basis for the disproportionate division of the community estate, we will reverse and remand the community property division, but we affirm the judgment in all other respects.

### FACTS

Karen married Jerry on November 24, 1989. During the marriage, Jerry adopted H.T.S., Karen's child from a previous relationship. The couple had two other children, Z.C.S. and E.C.S. Although Karen and Jerry were married for over ten years, they lived on separate floors within their home for the last several years of their marriage.

On November 1, 1999, Jerry filed for divorce and requested immediate temporary relief. On November 3, the court issued a temporary restraining order against Karen and appointed Jerry temporary sole managing conservator of their three children. The same day, Karen was served with notice of a November 15 hearing on these orders.

On November 3, the couple had a fight. Jerry says that Karen pushed him down a flight of stairs and kicked him repeatedly and that she hit H.T.S. Based on these acts, the court issued a protective order on November 4, prohibiting Karen from contacting Jerry or her minor children, except

through Jerry's attorney, and excluding her from the family home.

After a hearing on November 24, the court continued the protective order and issued temporary orders naming Jerry temporary sole managing conservator and Karen temporary possessory conservator, with supervised visitation on Saturday afternoons. The order specified the manner in which the parties would provide medical support to their children, but no other child or spousal support was ordered.

On February 11, 2000, Karen, through her attorney of record, filed an original answer that included a general denial and asserted a claim of separate property. On May 5, Jerry filed a First Amended Petition for Divorce. On May 18, Karen, again through her attorney, filed another pleading that she called an "original answer." This pleading included a general denial, but it did not assert a claim of separate property. On July 21, ten days before trial, Karen, *pro se*, filed an Original Cross–Petition for Divorce. By that time she had ended her representation by counsel. The cross-petition did not include a claim of separate property.

After a bench trial, the court issued a final decree of divorce on September 14. The court appointed Jerry sole managing conservator and Karen possessory conservator and issued a standard possession order. The court ordered Karen to reimburse Jerry $66 per month for health insurance premiums for the children and to pay $225 per month in child support. Jerry replaced Karen as trustee of a trust account held for H.T.S., which had been established earlier in the marriage. The court awarded the majority of the marital estate, including the family home, to Jerry and awarded $6,000 to Karen.[1] Her motion for new trial was denied without hearing on October 10.

On October 31, the court issued findings of fact and conclusions of law. The court found: (1) Karen was capable of making $400 per week; (2) H.T.S., age thirteen, Z.C.S., age ten, and E.C.S., age six, each signed and filed with the court a "Choice of Managing Conservator by Child Ten Years of Age or Older" choosing Jerry as managing conservator; (3) Karen committed family violence against Jerry and H.T.S. on or about November 3, 1999; (4) Karen threatened the welfare of the children; (5) Karen used and stored marihuana in the home in the presence of the children; (6) Karen had provided no significant financial support for her children since about November 4, 1999; (7) certain assets and debts were community property; and (8) during the divorce proceedings, Jerry incurred reasonable and necessary attorney's fees of $7,935 and costs and expenses of $465.70.

The court concluded that: (1) Jerry had separate property consisting of a rocking chair, a twin bed, a dresser, and two quilts; (2) the community property division was just and right, considering the rights of each party and the children of the marriage and Karen's fault in the breakup of the marriage; (3) Karen is likely to commit family violence against Jerry or a household member in the future; and (4) it

1. In the Final Divorce Decree, the home was subject to a $6,000 lien in favor of Karen. The court ordered Karen to convey her interest in the residence by Special Warranty Deed in exchange for satisfaction of the $6,000 lien, but she refused to do so. On September 22, 2000, on Jerry's motion, the court issued a Modified Final Decree of Divorce. The modified decree awarded the residence to Jerry without an equitable lien in favor of Karen and contained a judgment of $6,000 in favor of Karen. On September 25, after Jerry paid the $6,000 to the court's registry, the court released the judgment, taxing Karen $200 for Jerry's attorney's fees. Karen later withdrew the $6,000 from the registry.

is in the best interest of the children that Karen have possession of the children pursuant to the terms and conditions of the Texas Standard Possession Order.

## EVIDENCE OF KAREN'S SEPARATE PROPERTY

 Karen's first issue complains that the trial court erred by not allowing her to prove that she had separate property and by finding that she had none. At trial, the court sustained Jerry's objection to "[a]ny testimony that Mrs. Smith seeks to elicit either from this witness or any other witness regarding separate property" because Karen had no live pleading claiming separate property. Then the court excluded David Foreman's testimony, which Karen asserts would prove that her separate property money was used as the down payment for the family home.

 Preservation of a complaint is a prerequisite for appellate court review. TEX.R.APP. P. 33.1(a). Error may be predicated on a ruling that excludes a party's evidence only if the substance of the evidence was made known to the court by offer. TEX.R. EVID. 103; *Ludlow v. DeBerry*, 959 S.W.2d 265, 269–70 (Tex.App.-Houston [14th Dist.] 1997, no writ). The primary purpose of the offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. GOODE, WELLBORN & SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE, § 103.3 at 21 (2nd ed.1993). A secondary purpose is to permit the trial judge to

reconsider his ruling in light of the actual evidence. *Id.* An offer of proof is sufficient if it apprised the court of the substance of the testimony and may be presented in the form of a concise statement. *Chance v. Chance*, 911 S.W.2d 40, 51–52 (Tex.App.-Beaumont 1995, writ denied). Excluded evidence may also be preserved for appellate review by a post-trial bill of exception. TEX.R.APP. P. 33.2. However, when the substance of the evidence is apparent from the record, a formal offer of proof may not be necessary. TEX.R. EVID. 103(a); *Akin v. Santa Clara Land Co., Ltd.*, 34 S.W.3d 334, 339 (Tex.App.-San Antonio 2000, pet. denied). The record shows that Karen did not make an offer of proof or file a formal bill of exception. Moreover, the substance of the evidence she sought to present is not apparent from the record. Her complaint is not preserved for our review.[2]

Karen also contests the finding that she had no separate property. All property possessed by either spouse during or on dissolution of a marriage is presumed to be community property, until proven otherwise by clear-and-convincing evidence. TEX. FAM.CODE ANN. § 3.003 (Vernon 1998). Because Karen did not present evidence of her ownership of separate property, we must presume the correctness of the trial court's finding that she had none. *Id.*

We overrule Karen's first issue.

## COMMUNITY PROPERTY DIVISION

 Karen's second issue contends that the trial court unfairly divided the

**2.** At trial, Jerry objected to Foreman's testimony because Karen had no live pleading claiming separate property and because Karen did not claim separate property in response to a request for disclosure. Case law is not conclusive as to whether a party must plead separate property. JUDGE DON KOONS, 33 TEXAS PRACTICE SERIES: HANDBOOK OF TEXAS FAMILY LAW § 9.21, "Pleading Separate Property Claims" (2004). Some cases suggest that

general pleadings requesting a property division are sufficient and others have permitted evidence of separate property claims based on waiver, failure to except, or failure to object when the evidence is offered. *Id.* However, because Karen did not properly preserve her complaint, we do not reach the issue of whether separate property claims must be pled.

community estate. TEX. FAM.CODE ANN. § 7.001 (Vernon 1998). The net value of the community property (assets awarded minus debts apportioned) awarded to Karen was no more than zero and the net value of the community property awarded to Jerry was approximately $15,863. We note at the outset that Jerry has argued that Karen is estopped to complain about the property division because of the acceptance-of-benefits doctrine. Jerry asserts that because Karen withdrew the $6,000 that he tendered to the court's registry in satisfaction of the divorce decree, she accepted the benefits of the court's order. The acceptance-of-benefits doctrine, which is based on a theory of estoppel, states that if a litigant has voluntarily accepted the benefits of a judgment, he cannot afterward appeal therefrom. *Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950). But acceptance of benefits due to financial duress or other economic circumstances does not constitute voluntary acceptance. *Cooper v. Bushong,* 10 S.W.3d 20, 23 (Tex.App.-Austin 1999, pet. denied); *McAlister v. McAlister,* 75 S.W.3d 481, 484 (Tex.App.-San Antonio 2002, pet. denied). Because of the economic circumstances created by the court's property division, Karen's acceptance of the $6,000 was not voluntary. Therefore, the acceptance-of-benefits doctrine does not apply.

The court found the following assets to be community property: (1) the family home, valued at $47,800; (2) a 1999 GMC Sonoma pickup, valued at $17,000; (3) a leased 1998 Toyota RAV4 automobile, of unspecified value; (4) a $200 bank account in Jerry's name; (5) a life insurance policy on Jerry's life, having no value; (6) another account in Jerry's name, valued at $362.94; (7) a 401K account in Jerry's name, valued at $500; (8) a 401K account in Karen's name, of unspecified value; (9) a life insurance policy on Karen's life, of unspecified value; (10) furnishings, fix-

tures, and personal property in the parties' possession, of unspecified value; (11) post office box rental; and (12) rights to the couple's telephone number and the deposit for telephone service. The court also found that the couple owed the following debts: (1) mortgage on the family home, $27,000; (2) balance owed on the GMC Sonoma pickup, $17,000; (3) lease obligation on the Toyota RAV4, amount unspecified; (4) Sears credit account in Karen's name, $6,000; (5) Montgomery Ward credit account in Karen's name, amount unspecified; and (6) Dixie Finance debt in Karen's name, amount unspecified. The court awarded Karen $6,000, which Jerry paid into the court registry, whatever personal property was in her possession at the time of trial, and the 1998 Toyota RAV4. The court allocated to Karen the lease obligation on the RAV4 and the Sears, Montgomery Ward, and Dixie Finance debts, which were in her name. The court awarded the remainder of the community estate and debts to Jerry.

### *Standard of Review*

We review a trial court's property division for abuse of discretion. *Vallone v. Vallone,* 644 S.W.2d 455, 460 (Tex. 1982). A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to any guiding rules or legal principles. *K–Mart Corp. v. Honeycutt,* 24 S.W.3d 357, 360 (Tex.2000). With respect to the trial court's resolution of factual issues, we may not substitute our judgment for that of the trial court absent an arbitrary or unreasonable result or unless the factual determination is not supported by the evidence. *Brainard v. State,* 12 S.W.3d 6, 30 (Tex.1999) (not supported by the evidence); *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding) (arbitrary or unreasonable).

In exercising its discretion, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage. TEX. FAM.CODE ANN. § 7.001. A trial court has wide discretion in dividing the community estate. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998); *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex.1981); *Beard v. Beard*, 49 S.W.3d 40, 66 (Tex.App.-Waco 2001, pet. ref'd.). The court need not divide the community estate equally. *Smallwood v. Smallwood*, 548 S.W.2d 796, 797 (Tex.Civ. App.-Waco 1977, no writ). Texas courts have considered the following factors when equitably dividing a community estate:

(1) fault in the breakup of the marriage;

(2) the benefits that the innocent spouse would have derived had the marriage continued;

(3) disparity in the spouses' income or earning capacities;

(4) each spouse's business opportunities;

(5) differences in the spouses' education;

(6) physical health and need for future support;

(7) the relative ages of the parties;

(8) each spouse's financial condition and obligations;

(9) the size of each spouse's separate estate and any expected inheritance;

(10) the nature of the spouses' property;

(11) the rights of the children of the marriage;

(12) waste of community assets or constructive fraud against the community;

(13) gifts by one spouse to the other; and

(14) tax liabilities.

*Schlueter*, 975 S.W.2d at 589; Barbara Anne Kazen, *Division of Property at the Time of Divorce*, 49 BAYLOR L.REV. 417, 424–28 (1997) (discussing factors a court may consider in making an equitable division of the community estate); *see also*, *Murff*, 615 S.W.2d at 698–99; *Baccus v. Baccus*, 808 S.W.2d 694, 700 (Tex.App.-Beaumont 1991, no writ); *Jones v. Jones*, 699 S.W.2d 583, 585 (Tex.App.-Texarkana 1985, no writ).

The factors most commonly used to support a disproportionate community property division are fault and disparity in income, earning capacity, business opportunities, and education. Barbara Anne Kazen, *Division of Property at the Time of Divorce*, 49 BAYLOR L.REV. 417, 424–28 (1997). Also, when the age or poor health of one spouse suggests an inability to earn a living, a court may award that spouse a disproportionate share of the community estate. *Id.*

The record shows that Jerry had more income, a higher earning capacity, and better business opportunities than Karen. During the marriage, Jerry earned about $730 per week and up to $38,000 in at least one year. Karen testified that she earned about $900 per month, working part-time, and that she held a current insurance sales license. The court found Karen capable of earning $400 per week. Although Jerry is nine years older than Karen and has high blood pressure and diabetes, he offered no evidence to suggest that his age and physical condition would prevent him from earning a living. To the contrary, he testified that he worked every day and at times worked two jobs. He also said that he had never been hospitalized for either medical condition. On the other hand, Karen testified that she had a disabling back injury that limited her activities. She also said that she took anti-depressant and anti-anxiety medications.

In addition, the court ordered Karen to assume three community debts of

an unspecified amount. Because the debt owed by a spouse is a legally relevant factor in dividing the community estate, a court may abuse its discretion if it fails to consider such a factor. *See Murff,* 615 S.W.2d at 699 (spouse's debt as a factor in property division). The record does not disclose the amount of these debts, so the court could not have considered the amount of these debts in dividing the community estate.

▮ Although the court need not divide the community estate equally, a disproportionate division must be supported by some reasonable basis. *Smallwood,* 548 S.W.2d at 797, *Archambault v. Archambault,* 763 S.W.2d 50, 51 (Tex.App.-Beaumont 1988, no writ). Having reviewed the record, we find no reasonable basis for the disproportionate division of community assets and the liabilities of the parties. Therefore, we sustain Karen's second issue.

### MANAGING CONSERVATORSHIP OF CHILDREN

▮ In her third issue, Karen challenges the trial court's appointment of Jerry as sole managing conservator of the couple's three children. The best interest of a child is always the court's primary consideration in determining the issues of conservatorship and possession of and access to the child. TEX. FAM.CODE ANN. § 153.002 (Vernon 1998). A trial court has wide discretion when determining the best interest of a child, and its judgment will not be reversed on appeal unless it has abused that discretion. *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex.1982). A court does not abuse its discretion when it bases its decision on conflicting evidence, so long as there is some evidence to support its factual findings. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *J.R.W. v. State,* 879 S.W.2d 254, 257 (Tex.App.-Dallas 1994, no writ); *D.R. v. J.A.R.,* 894 S.W.2d 91, 95 (Tex.App.-Ft. Worth 1995, writ denied).

A child 12 years of age or older may, by writing filed with the court, choose his managing conservator, subject to the approval of the court. TEX. FAM.CODE ANN. § 153.008 (Vernon Supp.2004). However, while this divorce was pending, section 153.008 permitted a child ten years old or older to make such a designation. Act of May 30, 1999, 76th Leg., R.S., ch. 1390, § 12, 1999 Tex. Gen. Laws 4696, 4699 (amended 2001) (current version at TEX. FAM.CODE ANN. § 153.008 (Vernon Supp. 2004)). During this window, H.T.S. and Z.C.S., ages thirteen and ten, designated Jerry as managing conservator. E.C.S. was only six years old at the time of divorce.

Jerry testified that, on or about November 3, 1999, Karen pushed him down the stairs in their home. He said that Karen hit H.T.S. on numerous occasions and she was "constant[ly] yelling, screaming and hollering" at him. He testified that Karen told him if she couldn't have the kids, then neither of them would. He also said he found marihuana and smoking paraphernalia in Karen's part of the house.

According to Jerry, during the last several years of their marriage, he was the primary caregiver to the children, taking them to and from school and sometimes taking them to the doctor. He said that the house had been calm since Karen left. Both H.T.S. and Z.C.S. no longer needed their medicine and all the children were doing well in school.[3] H.T.S. scored in the

---

**3.** H.T.S. had been taking Paxil and hyperactivity medication; Z.C.S. had been taking Adderall. These medications had been prescribed to the children by a doctor from the Texas Department of Mental Health and Mental Retardation (MHMR).

ninety-fourth percentile on the TAAS test, Z.C.S. made the honor roll, and E.C.S. was invited to participate in the gifted and talented program.[4]

On cross-examination, Jerry admitted that between 1992 and 1994, he held an insurance sales job that frequently required him to work until nine or ten o'clock at night. However, his current job allowed him to get home early.

Karen denied threatening the welfare of the children. She introduced the testimony of twenty-three witnesses, only six of whom testified to any contact with a family member, unrelated to the divorce action, in the year preceding trial. Karen's other witnesses had only occasional contacts with the family from two to ten years earlier, but each gave testimony supporting her.

Janet Jorgenson, H.T.S.'s former teacher, had no knowledge of any abuse, nor was she aware that H.T.S. had problems at home and took medication. Francis Dodds, who supervised a parks' program in which H.T.S. had participated for the five summers preceding the divorce, said that she never suspected abuse. She said that Karen attended a play in the park and brought cookies.

Vivian Campbell, Karen's former mother-in-law, had not been to Karen and Jerry's home in several years. Campbell testified that Karen was a good mother to H.T.S. in 1988 or 1989. She visited Karen and Jerry in their home only four or five times during their ten-year marriage.

Jeremy Robertson, Karen's adult son from a prior relationship, claimed that the marihuana found in the house was his. He said that he had smoked marihuana when he lived in the house with Karen and Jerry, but admitted that he had not lived there for five or six years. Robertson also described two incidents when Jerry had been "violent" with him. Robertson said that when he was about thirteen years old, Jerry and his friend bit Robertson's leg while on a fishing trip. When Robertson was seventeen, Jerry "wrapped him up" in some type of hold. On cross-examination, Robertson conceded that he had been fighting with his mother, Karen, when Jerry intervened to protect her. Robertson also accused Jerry of having shown him sexually explicit photographs when he was a teenager.

Christie Gold Robertson, Jeremy Robertson's wife, said that when H.T.S. had visited them, he lied, stole and misbehaved. She admitted, however, that she and Robertson only saw Karen and Jerry four-to-six times a year for a couple of hours each visit.

Alice Lindsey, with whom Karen resides, testified that she accompanied Karen on a visitation, where she watched Karen hold and comfort her children. Also, Lindsey overheard E.C.S. tell Karen that she wanted to live with her but said, "I can't tell you that momma, because [Jerry] won't let me come and see you-all on weekends." Finally, Sylvia Padilla, who supervised Karen's visitations, testified that the children were happy to see both Karen and Jerry and that they are not afraid of Karen.

Tracy Hildebrand, Jerry's former daughter-in-law, testified that about nine or ten years earlier, when she was pregnant, H.T.S. jumped on top of her. At that time, Jerry "grabbed him up and threw him halfway up the stairs and told him to go to his room." On cross-examina-

4. TAAS (Texas Assessment of Academic Skills) is a standardized, academic proficiency test given to Texas students in grades three through eight and prior to high school graduation.

tion, she conceded that Jerry had been trying to protect her and her unborn child.

The trial court found that (1) H.T.S., Z.C.S., and E.C.S. each signed and filed with the court a "Choice of Managing Conservator by Child Ten Years of Age or Older" choosing Jerry as managing conservator;[5] (2) Karen committed family violence against Jerry and H.T.S. on or about November 3, 1999; (3) Karen threatened the welfare of the children; (4) Karen used and stored marihuana in the home in the presence of the children; and (5) Karen provided no significant financial support for her children between approximately November 4, 1999, and the date of trial. The court concluded that it is likely that Karen will commit family violence against Jerry or a member of the household in the future.

Because the record as a whole discloses sufficient facts to support the court's decision, we cannot say that the trial court abused its discretion in appointing Jerry as sole managing conservator and Karen as possessory conservator. *Gillespie,* 644 S.W.2d at 451. Accordingly, we overrule Karen's third issue.

## APPOINTMENT OF GUARDIAN AD LITEM

■■■ In her fourth issue, Karen notes the trial court's failure to appoint a guardian ad litem to represent the children. At the beginning of trial, about nine months after Jerry filed for divorce, Karen made an oral motion for continuance. She said she needed more time to respond to discovery and for the court to appoint a guardian ad litem for the children. This was the first time Karen had suggested appointment of a guardian ad litem.

Karen's request for a guardian ad litem for the children was not supported by argument or evidence. A trial court has discretion to appoint a guardian ad litem in a suit that does not involve termination of the parent-child relationship. TEX. FAM. CODE ANN. § 107.001. In *Hefley v. Hefley,* the court of appeals found no abuse of discretion in the trial court's failure to appoint a guardian ad litem in a divorce case, even though the appellate court believed it "cried out" for such representation. *Hefley v. Hefley,* 859 S.W.2d 120, 122–24 (Tex.App.-Tyler 1993, no writ). Both parties alleged abuse and family violence. *Id.* Mrs. Hefley alleged that Mr. Hefley had physically and mentally abused her in the presence of their children and had once shot at her with a rifle. *Id.* at 122–23. The record also showed that Mrs. Hefley had endangered the well-being of her children due to her mental problems. *Id.* In addition, both parties' mental states were in issue. Prior to the marriage, Mr. Hefley spent eleven years in a state hospital after being found insane for raping and mutilating a woman and killing her two small children. *Id.* at 122. Mrs. Hefley was hospitalized at least twice during the marriage for hallucinations. *Id.* The *Hefley* trial court initially appointed an attorney ad litem, but allowed him to withdraw without appointing a replacement. *Id.* at 121–22. The court of appeals believed that the children may have benefited from the appointment of another guardian ad litem, but held that the trial court's action was within the discretion given it by the statute in suits affecting the parent-child relationship generally. *Id.* at 124.

The facts in this case show a contentious, contested divorce. We find, however, that the court acted within its

---

**5.** The record contains "Choice of Managing Conservator" designations only from H.T.S. and Z.C.S.

discretion in refusing to make such an appointment. *Id.* We overrule Karen's fourth issue.

### CHILD SUPPORT ORDER

Karen's fifth and final issue challenges the trial court's order that she pay $225 per month in child support. The standard of review for a child support order is abuse of discretion. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex. 1990); *Thomas v. Thomas,* 895 S.W.2d 895, 896 (Tex.App.-Waco 1995, writ denied). A court may order either or both parents to support a child in a manner it specifies until the child attains age eighteen or until graduation from high school, whichever occurs later. TEX. FAM.CODE ANN. § 154.001 (Vernon 2002).

A child support order established in accordance with the child support guidelines of the Family Code in effect at the time of the hearing is presumed to be reasonable, and an order conforming to the guidelines is presumed to be in the best interest of the child. *Id.* § 154.122 (Vernon 2002). However, a court order may deviate from the child support guidelines if these presumptions are rebutted by evidence. *Id.* § 154.123 (Vernon 2002).

In determining whether application of the guidelines would be unjust or inappropriate under the circumstances, the court shall consider evidence of all relevant factors. *Id.* Among the non-exclusive factors that the Family Code identifies as relevant are: (1) the ages and needs of the children; (2) the parent's ability to contribute to the support of the children; (3) financial resources available for the children's support; (4) the parent's net resources, including earning potential if the parent is intentionally unemployed or underemployed; (5) provision for health care insurance and payment of uninsured, special, or extraordinary medical expenses of the parties or the children; and (6) the debt each parent assumed. *Id.*

When a trial court establishes the amount of child support a parent must pay, the court must consider that parent's ability to contribute to the child's support. *In the Interest of J.M.T.,* 39 S.W.3d 234, 239 (Tex.App.-Waco 1999, no pet.). Each parent should support the child commensurate with his ability to pay; however, the amount paid should not be so great as to deny that party the necessary expenses of living. *E.g., Welch v. Welch,* 694 S.W.2d 374, 377 (Tex.App.-Houston [14th Dist.] 1985, no writ); *Strauss v. Strauss,* 619 S.W.2d 18 (Tex.Civ.App.-Corpus Christi 1981, no writ). The child support order implies a finding that the obligor has the ability to pay the amount ordered. *J.M.T.,* 39 S.W.3d at 239.

The court found that Karen was capable of earning $400 per week, but Karen contended that she was capable of earning that salary only before injuring her back, after which her injury prevented her from earning that amount and from selling insurance. The only evidence Karen introduced regarding her living expenses was testimony that she paid $150 per month to Alice Lindsey as rent.

Under the guidelines for computing child support obligations in the Family Code, a salary of $400 per week would result in a child support obligation for three children of about $409 per month. The court ordered $225 per month in child support. The court also ordered that Karen pay $66 per month for health insurance for the children. The guidelines for support of a child are based on the assumption that the court will order the obligor to provide medical support for the child in addition to the amount of child support calculated in accordance with those guidelines. TEX. FAM.CODE ANN. § 154.064 (Ver-

non 2002). The record shows that the court deviated downward from the child support guidelines, which is within its discretion to do. *Id.* § 154.122. Because we find sufficient factual support in the record for the amount of child support ordered, we find no abuse of discretion. *J.M.T.*, 39 S.W.3d at 239. We overrule Karen's fifth issue.

## CONCLUSION

With respect to the division of the community property, we reverse and remand this cause for further proceedings. We affirm the judgment in all other respects. *See Glud v. Glud,* 641 S.W.2d 688, 691 (Tex.App.-Waco 1982, no writ). To the extent that we affirm, we withdraw our order of January 18, 2002, suspending the enforcement of the divorce decree.

Chief Justice GRAY dissenting and concurring.

TOM GRAY, Chief Justice, dissenting and concurring.

The majority has determined that the trial court erred in its division of the community estate. I believe that this determination is in error for two reasons. First, Karen elected to accept the benefits of the judgment. Second, the record does not support the determination that the trial

court abused its discretion in making the division of the community estate, that is, that the trial court acted without reference to guiding rules or principles.

## Election

As noted by the majority, the amended judgment resulted in $6,000 being deposited in the registry of the court for the benefit of Karen. It is undisputed that Karen withdrew these funds during the pendency of this appeal. Acceptance of benefits under the judgment should estop her from contesting the propriety of the judgment. *Tex. State Bank v. Amaro,* 87 S.W.3d 538, 544 (Tex.2002); *Carle v. Carle,* 149 Tex. 469, 472, 234 S.W.2d 1002, 1004 (1950). She claims that the acceptance of benefits under the judgment was not voluntary but was the result of financial duress.[1] I am not persuaded by her bold assertion of financial duress, especially given that during the pendency of this appeal the majority has relieved her of even her minimal obligation for child support. *Smith v. Smith,* 63 S.W.3d 599 (Tex.App.-Waco 2002, order) (per curiam).

## No Abuse of Discretion

Upon examination of the merits of the division, I cannot find that the trial court abused its discretion in its division of the community estate. When the parties do not have much, the fact that one spouse

1. With regard to this theory for not applying estoppel to Karen's acceptance of the benefits, there has been very little analysis of the elements to be proven, the methods of proof, and whether the court of appeals is acting as a factfinder or should act as a reviewing court. I do not know under what authority we would act as a finder of fact of economic duress. In addressing this issue, the San Antonio Court placed the burden on the appellee not only to show that the appellant accepted the benefits of the judgment, but also to show that the acceptance of the benefits was *not* due to duress. *McAlister v. McAlister,* 75 S.W.3d 481, 484 (Tex.App.-San Antonio 2002, pet. denied). And all of this had to be proven as a

matter of law. *Id.* It seems to me that the burden to raise and prove duress, because it is in the nature of an affirmative defense to the estoppel argument, should be on the party who has accepted the benefits of the judgment. The party who has accepted the benefits will be in the best position to present the evidence necessary to decide the issue. This leaves open the rather thorny questions of who should act as factfinder and the method of proof. An abatement to the trial court to resolve the factual issues would seem to be a viable option, thus leaving us the responsibility to review the trial court's findings under our traditional role as an appellate court.

does not get much is not an abuse of discretion.

Like almost any issue involving numbers, with the use of selected computations one could make the division look grossly disproportionate. Based on the amounts as known, the trial court awarded Jerry 91% of the assets. The trial court awarded Karen only 9% of the assets. But this division resulted in Jerry's receiving only $9,863 in net benefit more than Karen, because Jerry was awarded 88% of the debt and Karen was awarded only 12% of the debt. Given the trial court's other findings that can be considered in making a "just and right" division, including Karen's fault in the breakup of the marriage and a downward departure from the standard guidelines in the child support that Karen was ordered to pay, I find no abuse of discretion in the division of the community estate.

The majority puts some emphasis on the fact that three debts in Karen's name were awarded against Karen even though the amounts were unknown. The failure to present evidence of the amount of these debts was within Karen's control. She should not benefit on appeal from her failure to produce evidence in her control. It should also be noted that the trial court awarded Karen two assets of unspecified value: one of the vehicles, a RAV4; and the balance of a 401(k) account in her name.

The trial court did not act without regard to guiding rules or principles. The Family Code requires the trial court to order a division of the estate in a manner the court deems just and right, having due regard for the rights of each party. TEX. FAM.CODE ANN. § 7.001 (Vernon 1998). The trial court has wide discretion in dividing the property of spouses upon divorce. *E.g., Schlueter v. Schlueter,* 975 S.W.2d 584, 589 (Tex.1998); *Beard v. Beard,* 49 S.W.3d 40, 66 (Tex.App.-Waco 2001 pet. denied) (op. on orig. submission). And as the majority points out, the Supreme Court has instructed that we may not substitute our judgment for that of the trial court unless the result is arbitrary or unreasonable, or the factual determination is not supported by the evidence. *Brainard v. State,* 12 S.W.3d 6, 30 (Tex.1999), *disapproved of on other grounds, Martin v. Amerman,* 133 S.W.3d 262, 268 (Tex.2004); *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding). Just because the majority would have divided the community estate differently does not establish an abuse of discretion by the trial court. The majority's holding causes me to believe that it has not properly applied the standard of review.

For these reasons, I respectfully dissent.

As to the remainder of the opinion, which affirms the trial court's judgment, I concur.