**Opinion filed March 19, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00269-CV
_____

### JIM RON CURLEE, Appellant

### V.

### KIM CURLEE, Appellee

**On Appeal from the County Court at Law**

**Brown County, Texas**

**Trial Court Cause No. DV0607161**

## MEMORANDUM OPINION

This is a marital property distribution case. Following a bench trial, the trial court entered a divorce decree and divided the community property and debts between the parties. Jim Ron Curlee appealed, complaining that the trial court improperly evaluated two businesses owned by the parties and unfairly distributed the marital assets and liabilities. Finding no error, we affirm.

### I. *Background Facts*

When Jim and Kim were married, he was a teacher and coach. In 1999, he left his job, cashed out his retirement account, and purchased a Chicken Express restaurant in Brownwood.

Kim's brother, Terry Bishop, had owned and operated Chicken Express restaurants since 1990. He helped Jim and Kim get started. The Brownwood restaurant's annual sales increased to one million, and the Curlees decided to expand by opening a second restaurant in Early. Terry built the restaurant and leased it to Jim and Kim. The restaurant opened in 2005. Because of the two restaurant's proximity, sales at the Brownwood location dropped $7,000 per week, and it started losing money. Jim stopped paying his employment (941 taxes) to help pay for the Early restaurant's equipment. He also borrowed money, incurred credit card debt, and fell behind on his sales taxes. The parties separated in July 2006. Jim then took money out of the business to purchase a house, furniture, and entertainment items. The parties attempted to sell the restaurants but were unable to do so.

By the time of the divorce hearing, the business was current on sales taxes, but the parties owed $163,000 in 941 taxes, $325,000 in other business-related debt, and $43,000 to Jim's mother. The trial court valued the Early restaurant at $600,000 and awarded it and its associated debt to Kim. The court valued the Brownwood restaurant at $550,000 and awarded it and its associated debt to Jim.

## II. *Issues*

Jim challenges the trial court's judgment with three issues. He complains that the trial court did not make a fair, equitable, or appropriate apportionment of the community assets and liabilities of the parties; that it erred when valuing the parties' Brownwood Chicken Express restaurant; and that it erred when valuing the parties' Early Chicken Express restaurant.

## III. *Standard of Review*

We review a trial court's division of property under an abuse of discretion standard. *Wells v. Wells*, 251 S.W.3d 834, 838 (Tex. App.—Eastland 2008, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Sw. Bell Tel. Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex. 1965).

When an appellant challenges the trial court's order on legal or factual sufficiency grounds, we do not treat these as independent grounds of reversible error but, instead, consider them as factors

2

relevant to our assessment of whether the trial court abused its discretion. *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.). To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient, we consider whether the court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in the application of that discretion. *Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex. App.—El Paso 1998, no pet.).

### IV. *Analysis*

Texas law requires trial courts to divide the estate of the parties in a manner that is just and right having due regard for the rights of each party. TEX. FAM. CODE ANN. § 7.001 (Vernon 2006). There is no requirement that the court effectuate an equal division. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). In reviewing the equitable remedy fashioned by the trial court, we must determine not only whether the trial court's findings are supported by the evidence, but also whether error, if established, caused the trial court to abuse its discretion. *Garcia v. Garcia*, 170 S.W.3d 644, 649 (Tex. App.—El Paso 2005, no pet.). We must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion in dividing marital property. *Pletcher v. Goetz*, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied).

A disproportionate division must have a reasonable basis. *Smith v. Smith*, 143 S.W.3d 206, 214 (Tex. App.—Waco 2004, no pet.). If there is some evidence of a substantive and probative character to support the decision, the trial court does not abuse its discretion if it orders an unequal division of the marital estate. *Ohendalski v. Ohendalski*, 203 S.W.3d 910, 914 (Tex. App.—Beaumont 2006, no pet.).

The linchpin of Jim's argument is that the trial court improperly valued the parties' restaurants and that, if they are correctly valued, Kim impermissibly received 60% of the marital estate. The trial court found that the Early restaurant's gross value was $600,000, that it had equipment debt of $193,742.83, and that $88,454.84 of the parties' 941 tax debt was attributable to it. The trial court found that the Brownwood restaurant's gross value was $550,000, that it had an equipment debt of $59,290.57, and that $74,546.96 of the 941 tax debt was attributable to it. Jim argues that the Early restaurant's gross value is actually $700,000, that the Brownwood restaurant's gross value is only $500,000, and that the trial court's error was caused by the failure to account for the effect of separate ownership on the Brownwood restaurant.

Jim testified that the gross value of the Brownwood restaurant was $500,000 and that the Early restaurant's gross value was $700,000. He calculated this by taking 50% of last year's sales at each location. Kim assigned a gross value of $500,000 to each restaurant. Terry agreed that 50% of the previous year's sales was a good rule of thumb for valuing the restaurants. He thought that the two restaurants were pretty equal in value but believed that the Brownwood restaurant could make more money because it had a lower overhead. He also confirmed that it was difficult to sell just one restaurant because of the competition from the other, that no third party was willing to buy both, and that it was challenging to value them in the absence of a market.

Because the trial court had evidence that the Early restaurant was worth as much as $700,000 or as little as $500,000, it did not abuse its discretion by finding that it was worth $600,000. Jim's third issue is overruled.

Jim is correct that both he and Kim valued the Brownwood restaurant at $500,000 and that no witness testified that it had a gross value of $550,000. However, we note that the trial court included in its valuation all money in the Brownwood restaurant's checking account, all cash at the restaurant, all inventory in the restaurant, and one-half of the money in the savings account. At the time of the divorce hearing, there was $6,442 in the savings account and $21,000 in the checking account. It is not clear that either party included these funds in their valuations. The trial court also included any prepaid hunting leases in the Brownwood restaurant's value. Jim testified that he used a company check to purchase a deer lease for $8,000. He participated in that lease with others, and the business account was reimbursed for their share of the lease. Kim testified that $4,000 of this payment had not yet been reimbursed. Jim is incorrect when he says that the trial court failed to consider the Early location's effect on Brownwood sales. The parties' valuation testimony was based upon 2006 sales. The Early restaurant was opened in 2005.

Even if we agree that the trial court's valuation of the Brownwood restaurant is not supported by sufficient evidence, this is not an independent ground of reversible error but is a factor relevant to our assessment of whether the trial court abused its discretion. *Boyd*, 131 S.W.3d at 611. Jim represents that he received a net estate of $394,470.19 and that Kim received a net estate of $414,739.19. If the trial court erroneously overvalued the Brownwood restaurant by $50,000, his net estate is worth $344,470.19. Using these figures, Jim received 48.75% of the marital assets and Kim the remaining 51.25%.

4

The supreme court has held that trial courts may consider several factors when dividing the marital estate including the spouses' capacities and abilities, business opportunities, relative financial condition and obligations, and the nature of the property. *Murff*, 615 S.W.2d at 699. There had been some consideration to Jim buying out Kim's interest in the two restaurants, but he was unable to effectuate that. There had been an attempt to sell the restaurants, but that was unsuccessful. The trial court was, therefore, effectively required to divide the two restaurants between the parties. Because Jim stopped paying 941 taxes in 2005 to save money for a down payment on the Early restaurant's equipment, the parties had a 941 tax liability of $163,000. Kim was unaware that he had done this. She is, however, responsible for that debt. When Jim filed for divorce, the parties had $27,000 in the business savings account and $21,000 in the checking account. Kim had no access to either account. By the time of the divorce hearing, the balance of those accounts was $6,442 and $21,000. During the pendency of the divorce, Jim took business funds and purchased a set of drums, a keyboard, and a $1,200 television. He also used business funds for a $35,000 down payment on a new home and to furnish that house.

Even though Jim was responsible for the increased business debt during the pendency of the divorce, the trial court made Kim responsible for a $23,000 debt to MBNA and a $20,000 debt to Advanta. Kim was planning to quit her job as a school teacher to operate one of the restaurants. She had some experience helping Jim during the summers and on weekends, but she did not have his expertise. Nonetheless, she is now responsible for the store with the higher overhead and has considerable exposure to business-related debt and unpaid taxes. The trial court did not abuse its discretion by determining under these circumstances that she was entitled to a slightly disproportionate distribution. Jim's first and second issues are overruled.

V. <em>Holding</em>

The judgment of the trial court is affirmed.

RICK STRANGE

JUSTICE

March 19, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.