COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

§   No. 08-13-00026-CV

IN THE INTEREST OF:  §   Appeal from

MAKIS P. MOSCHOPOULOS,  §   383rd District Court

A DISABLED ADULT CHILD  §   of El Paso County, Texas

§   (TC # 2003CM2233)

§

# **O P I N I O N**

Ana[1] Moschopoulos appeals the trial court's denial of her motion to recover child support payments in excess of that required by a prior child support order. After an evidentiary hearing, the Honorable Susan Larsen, sitting by assignment, granted a directed verdict[2] in favor of Appellee, Panagis P. Moschopoulos.[3] For the reasons that follow, we affirm.

---

[1] Appellant's name varies in the record, sometimes expressed as "Anna" and other times as "Ana". Because the notice of appeal and the Clerk's Record use "Ana", we shall do likewise.

[2] We recognize that inasmuch as this was a bench trial as opposed to a jury trial, the appropriate appellation would be a motion for judgment. However, we refer to the language as used by Appellee in the motion and the judgment. The difference has caused some disagreement concerning the appropriate standard of review. However, because the motion was granted after Judge Larsen heard the evidence from both parties, we review the judgment for legal and factual sufficiency.

[3] Appellee was consistently referred to as Peter in the Reporter's Record, and we shall do likewise.

# FACTUAL SUMMARY

## The Divorce Action

After 27 years of marriage, Ana and Peter divorced. The divorce was judicially pronounced and rendered on November 29, 2004, but the decree was signed on May 13, 2005 by the Honorable Mike Herrera. The parties have two children, who at the time were ages 19 and 17. The older child is the subject of this suit. Makis is disabled, cannot make sound decisions, is not capable of living on his own, and requires full supervision and assistance.

All matters were tried to the bench in piecemeal fashion over six days between August and November 2004. On December 30, 2004, Judge Herrera issued a letter ruling to the attorneys announcing his ruling. He appointed the parties as joint managing conservators, with Peter having the right to designate the primary residence of the child within a geographical restriction. He divided the community estate, confirmed the parties' separate estates and added:

> IMPORTANT NOTE:
>
> In dividing the property, I took into consideration the following factors:
> Child support owed by [Ana] to [Peter]
> House pmts owed by [Ana] to Peter]
> Future child support to be paid by [Ana] (lump sum payment granted, including future child support for the disabled child)
>
> The Court does make a finding that because of [Peter]'s retirement age, and because of the vast disparity in the separate estate of the parties, and because of the disabled child, and because of the fact that [Peter] being [sic] the primary caretaker of both children, it would be a just and right division of the marital estate to divide it as the court has divided it.

Judge Herrera listed the assets and liabilities awarded to each spouse. No valuations were assigned in the body of the letter, but two exhibits were attached. Exhibit A identified and valued Peter's household furniture and furnishings in El Paso and in Greece. Exhibit B identified Ana's household furniture and furnishings in Greece. The judge confirmed and

identified the separate property of each party. He did not value it other than to say what we have quoted above - that the vast disparity in the separate estates of the parties was a factor he considered in the division of the community estate.

The decree of divorce divided the community property in conformity with the letter ruling with the exception that no values were listed other than the amounts of various debts assessed against Ana. The separate estates were identified and confirmed without reference to value. The decree did not enumerate the factors for disproportionate division that were itemized in the letter ruling, but it did contain the following:

### Findings Regarding Child Support

The Court finds that the Court has divided the estate of the parties in a disproportionate manner. In doing so, it is the Court's intention that any support obligation owing by [Ana] is thereby fully satisfied for both children since the Court divided the estate of the parties taking into account the future support of and needs of the children. IT IS THEREFORE ORDERED that [Ana]'s child support obligation is fully satisfied and she shall not be required to pay any additional child support for them in the future.

No request was made for either traditional or statutory findings of fact and no appeal ensued. Some sixteen months after the divorce, both Makis and his brother moved to their mother's home. In September 2006, Ana was appointed the permanent guardian of Makis by Probate Judge Max Higgs.

### The Independent Action

On September 20, 2010, Ana filed suit against Peter seeking to recover excess child support pursuant to TEX.FAM.CODE ANN. § 154.012. She alleged that the order for child support had terminated when she was appointed Makis' permanent guardian. In essence, she complained that the trial court had ordered a disproportionate division of the community estate in the divorce action in lieu of ordering Ana to pay child support. What at the time of divorce was

envisioned as life-time support ended up lasting only sixteen months.  She did not seek a redivision of assets.  Instead she sought a money judgment.

### The Statute

We quote here the language of the statute that forms the basis of the lawsuit.

**§ 154.012.  Support Paid in Excess of Support Order**

(a) If an obligor is not in arrears and the obligor's child support obligation has terminated, the oblige shall return to the obligor a child support payment made by the obligor that exceeds the amount of support ordered, regardless of whether the payment was made before, on, or after the date the child support obligation terminated.

(b) An obligor may file a suit to recover a child support payment under Subsection (a).  If the court finds that the obligee failed to return a child support payment under Subsection (a), the court shall order the obligee to pay the obligor attorney's fees and all court costs in addition to the amount of support paid after the date the child support order terminated.  For good cause, the court may waive the requirement that the oblige pay attorney's fees and costs if the court states the reasons supporting that finding.

TEX.FAM.CODE ANN. § 154.012 (West 2014).  Thus, Ana, as the obligor, was required to prove the amount of support ordered and the amount she overpaid.

## THE CRUX OF THE MATTER

Ana's theory at trial was to demonstrate the total value of the community estate, the monetary amount of the assets awarded to Peter, and the monetary amount of assets awarded to her.  She offered evidence of her income at divorce and the amount of child support she would have been ordered to pay under the statutory guidelines had a lump sum payment not been awarded.  Peter had prepared and admitted into evidence both an inventory and a proposed division during the divorce trial.  Ana did not.  But during the trial of her independent action, she testified as to the 2004 values of (1) assets awarded to her, (2) assets awarded to Peter, (3) her separate property, and (4) Peter's separate property.

Peter's theory was that because Judge Herrera had not filed formal findings of fact, Judge Larsen could not speculate as to the value of any assets, or what percentage of the community estate either spouse had been awarded. As we have previously held, because an appellant cannot demonstrate that a trial court abused its discretion in making a just and right division of the community estate without being able to quantify the size of the community pie or just how large a slice each spouse was served, an appellant is entitled to findings on characterization and valuation when error is preserved. *Roberts .v Roberts,* 999 S.W.2d 424, 235 (Tex.App.--El Paso 1999, no writ). In 2001, the Legislature finally passed a bill urged by the Family Law Section for the previous two sessions. It addressed the difficulty emphasized in the *Roberts* case and authorized statutory findings of fact on characterization and valuation.

### § 6.711. Findings of Fact and Conclusions of Law

(a) In a suit for dissolution of a marriage in which the court has rendered a judgment dividing the estate of the parties, on request by a party, the court shall state in writing its findings of fact and conclusions of law concerning:

    (1) the characterization of each party's assets, liabilities, claims, and offsets on which disputed evidence has been presented; and

    (2) the value or amount of the community estate's assets, liabilities claims and offsets on which disputed evidence has been presented.

(b) A request for findings of fact and conclusions of law under this section must conform to the Texas Rules of Civil Procedure.

TEX.FAM.CODE ANN. § 6.711 (West 2006). While the statute requires that all assets and liabilities be characterized, it requires valuation only as to community property. Nevertheless, traditional fact findings pursuant to TEX.R.CIV.P. 296 clearly offer an alternative, requiring a court to value separate assets. Indeed, there is no other way for the court to consider the size of the respective separate estates.

## Analysis

Without regard to whether valuations from exhibits to a letter ruling can be considered as formal findings, we will refer to them solely for the purpose of describing the parameters of the dispute.[4]

### *Ana's Position*

| | |
|---|---|
| Community property | $386,115 |
| Her ½ assuming an equal division | $193,058 |
| Community assets she received | $106,221  (27%) |
| Community assets Peter received | $279,894  (73%) |
| Ana's separate property | $403,264 |
| Peter's separate property | $654,718 |

Ana argues that based on these numbers, Peter received nearly $87,000 more than half of the community estate ($279,894 - $193,058 = $86,836).  She then testified that pursuant to the statutory child support guidelines, she would have paid roughly $13,000 in support for the two boys for the sixteen months they lived with Peter.  Applying other adjustments, Ana sought judgment for $76,166.

### *Peter's Position*

Peter counters that Ana did not make a child support payment in excess of the amount ordered and in fact made no child support payment at all because the trial court ordered a disproportionate division instead.  He did testify concerning his divorce inventory and the value of various assets.

| | |
|---|---|
| Community property | $310,533 |
| His ½ assuming an equal division | $155,266 |
| Community assets Ana received | $115,900  (37%) |
| Community assets he received | $194,633  (63%) |
| Ana's separate property | $734,000 |
| Peter's separate property | $185,000 |

---

[4]  Ana introduced into evidence Peter's inventory from the divorce trial and tendered an exhibit relying upon the trial court's letter ruling.  Peter's counsel stipulated to the values itemized in the inventory but did not stipulate that those were the values that Judge Herrera assigned to the assets.

From a purely mathematical perspective, the parties differ in the size of the gross community estate by only $75,582 ($386,115 - $310,533 = $75,582).[5] Reasons for the discrepancy are apparent from the record. Peter reduced the fair market value of the community homestead by the mortgage indebtedness of $43,500. He maintained that in determining a just and right division of the estate, debt must be considered. Ana believed, rather vehemently, that the judge can only consider fair market value of the assets without regard to debt. Clearly her approach is erroneous. Because the debt owed by a spouse is a legally relevant factor in dividing the community estate, a court may abuse its discretion if it fails to consider it. *Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1981); *Smith v. Smith*, 143 S.W.3d 206, 214 (Tex.App.--Waco 2004, no pet.).

At this point, the discrepancy in the size of the pie has been reduced from $75,582 to $32,082 ($75,582 - $43,500 = $32,082). We turn next to jewelry, which the trial court did not value. Peter assigned values in his inventory, claiming he owned jewelry worth $2,500 while Ana owned jewelry worth $25,000. For the sake of argument, we will assume the trial court adopted Peter's value. The discrepancy is reduced by $22,500 to $12,082 ($32,082 - $22,500 = $9,582). Finally, we look at automobiles. Again, only Peter's values were before the trial court. He valued the two cars awarded to him at $5,000 and the two cars awarded to Ana at $17,500, for a discrepancy of $12,500. This brings the dispute over values to within $3000 ($75,582 - $43,500 (mortgage) - $22,500 (jewelry) - $12,500 (automobiles) = negative $2,918).

But we have not yet addressed the assignment of remaining debt. Excluding the attorney's fees of both parties, Peter was ordered to pay $17,000 in debt (in addition to the mortgage), while Ana was ordered to pay $4219.14 in credit card charges plus unspecified amounts of rent and utilities for six months. Using Ana's numbers, she received net assets of

---

[5] This is, of course, quite close to her recoupment claim for $76,166.

$102,002 ($106,221 - $4219.14) and Peter received net assets of $219,394 ($279,894 - $43,500 (mortgage) - $17,000 (other debt)). Added together, the net community estate totaled $321,396. An equal division would award each spouse $160,698; Ana received $58,696 less than half ($160,698 - $102,002) and Peter received $58,696 more than half ($219,394 - 160,698).

As we have mentioned above, Ana claimed that Peter received nearly $87,000 more than half of the community estate ($279,894 - $193,058 = $86,836). Yet using her own numbers to arrive at a net estate, the actual number is not $86,836, or even her adjusted number of $76,166, but $58,696. Must we assume that Judge Herrera determined that lump sum child support should be roughly $87,000, $76,000, or $59,000?

For a variety of reasons, the answer to this question is no. This is true regardless of whether we consider Judge Herrera's findings in the letter ruling. According to the findings, Judge Herrera divided the estate disproportionately and considered factors other than a lump sum child support award, specifically the "vast disparity in the separate estate of the parties."[6] Using Ana's values, the disparity between her separate estate and Peter's separate estate was $251,454. Using Peter's values, the disparity is $549,000, more than twice as much. Ana offered her opinion to Judge Larsen of the competing values, but Judge Larsen had no reference point as to Judge Herrera's valuations. If we disregard the values in the letter ruling and consider, as Ana asks us to do, only the findings as to child support contained within the decree, we still cannot determine the size of the community estate or how disproportionate the division was. Without knowing the values that Judge Herrera assigned to the net community estate or the parties'

---

[6] The respective sizes of the parties' separate estates are factors which the trial court may consider in awarding a disproportionate division of the community estate. *Murff*, 615 S.W.2d 696 at 699 ("…the trial court may consider such factors as the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property.")

separate estates, Judge Larsen could not conclude what amount of money Judge Herrera calculated to be the lump sum child support award. For those same reasons, neither can we.

Ana failed to meet her burden of proof as to the amount of the child support award. She also failed to demonstrate by what amount she overpaid it. We overrule her issues for review and affirm the judgment of the trial court.

October 31, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)