

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00406-CV

ANTHONY DEWIGHT HEARD                          APPELLANT

V.

KRISTI DAWN HEARD                              APPELLEE

----------

### FROM THE 431ST DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Anthony Dewight Heard appeals from a final decree of divorce. We will affirm as modified.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

Anthony and Appellee Kristi Dawn Heard married in April 2003. They have two children, ages seven and four. Kristi filed her original petition for divorce in March 2011, alleging insupportability and requesting the trial court to disproportionately divide the community property in her favor, to confirm the parties' separate property, and to award her attorney's fees, among other things. Anthony filed a counterpetition for divorce.

In August 2012, the trial court conducted a jury trial on the issues of valuation and characterization of property, including the amount of reimbursement owed to the community estate.[2] Kristi presented uncontroverted evidence that she and Anthony had purchased their residence before they married, giving each a one-half ownership interest in the separate property, and that the community estate was entitled to reimbursement in the amount of $30,548.73 for the payments that were made towards the mortgage.[3] The trial court granted Kristi a directed verdict on the jury issues before conducting a bench trial on the remaining issues, which included division of the community estate.[4] The trial court ultimately signed a final decree of divorce that, among

---

[2]Anthony represented himself.

[3]We use the term "residence" throughout this memorandum opinion to refer to the property located at 8220 Holliday Road, Lantana, Texas 76226.

[4]The parties agreed upon conservatorship and possession of and access to the children.

other things, divided the community estate, confirmed the parties' separate property, and awarded Kristi attorney's fees in the amount of $18,568.98 and a present possessory interest in Anthony's one-half separate property interest in the residence. Anthony appeals.

### III. COMMUNITY PROPERTY DIVISION

Anthony argues in his first issue that the trial court abused its discretion by awarding Kristi a disproportionate share of the community estate.

The trial court shall order a division of the parties' estate in a manner that the court deems just and right, having due regard for the rights of each party. Tex. Fam. Code Ann. § 7.001 (West 2006). The property division need not be equal, but it must be equitable, and a trial court may consider numerous factors when dividing the community estate, including the spouses' relative earning capacity and business opportunities, the parties' relative financial condition and obligations, the parties' education, the size of the separate estates, the custody of the children, and the probable need for future support. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). There must be a reasonable basis for ordering an unequal division of marital property. *Smith v. Smith*, 143 S.W.3d 206, 214 (Tex. App.—Waco 2004, no pet.).

We review the trial court's property division for an abuse of discretion. *Loaiza v. Loaiza*, 130 S.W.3d 894, 899 (Tex. App.—Fort Worth 2004, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221

3

S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

The trial court's division of community property and debt, as set out in the divorce decree, appears to be consistent with the allocations that Kristi included in her divorce inventory summary sheet—admitted at trial as Petitioner's Exhibit 11. As Kristi observes, the exhibit demonstrates that Anthony and Kristi had community assets in the amount of $43,297.77, community debt in the amount of $96,387.28, and, therefore, a negative community value of $53,089.51. Of that amount, and considering the decree's awards, the trial court awarded Anthony $30,350.15 and Kristi $22,739.36, or approximately 57% and 43%, respectively, of the negative community value.

The divorce decree also ordered that the community was entitled to reimbursement from Kristi's and Anthony's separate estates in the amount of $30,548.73 for the payments made by the community towards the mortgage on the separate property residence.[5] Of that amount, and as part of its just and right division, the trial court ordered that Kristi was entitled to $23,011.90 and that Anthony was entitled to $7,536.83. The trial court offset those amounts and ordered that Kristi recover $15,475.06.

Anthony analyzes a number of *Murff* factors and concludes that he should have been awarded a larger portion of the community estate. He directs us to

---

[5]As far as we can tell, this figure was not included in Petitioner's Exhibit 11. But even if it was, our conclusion of this issue would be no different.

evidence that Kristi, a pharmacist, was the primary breadwinner throughout the marriage; that in addition to her current job, she sometimes worked for her former employer; that he last worked full time in January 2012 making $10 per hour as an inventory auditor; and that he suffered a compound fracture to some part of his leg in 2010. Anthony also points out that that there was no evidence regarding fault for the divorce, that there was no evidence of the disparity of the parties' ages, and that the parties' separate estates were essentially similar (one-half each of the residence). While some of this evidence certainly supports Anthony's argument, there is other evidence that the trial court could have relied upon to disproportionately divide the community estate in Kristi's favor.

The evidence shows that Kristi works as a pharmacist, but there was no testimony about her salary. Anthony, on the other hand, has a Master's Degree in strategic marketing and brand management, worked for FedEx from March 2005 to June 2006 making $75,000 a year, worked for Axiom from June 2006 to August 2007 making $75,000 a year, and worked for Javelin Marketing Group from January 2008 to September 2009 making $75,000 a year. Anthony last worked full time in January 2012 making $10 per hour, but Kristi opined that he was intentionally unemployed, the trial court made the same finding in the divorce decree, and Anthony does not challenge that finding on appeal. Anthony contended at trial that his broken leg adversely affected his employment, but the fracture occurred in 2010 (the final trial took place in August 2012), and he

5

testified that the injury did not prevent him from working in his field of study and that he did not have any mental conditions that prevented him from working.

Further, the parties agreed that Kristi would be children's primary joint managing conservator. Kristi testified that Anthony did not exercise his visitation with the children 70% of the time and that she therefore sometimes had to hire a babysitter. She also explained that Anthony was behind on his child and medical support payments, and she expressed concern about his willingness and ability to make child support payments in the future. Anthony moved out of the residence in April 2011, and Kristi made the entire mortgage payments thereafter. Anthony agreed at trial that he had refused to attend mediation after the trial court had ordered the parties to do so, and Kristi opined that Anthony had intentionally prolonged the divorce case.

The trial court had a reasonable basis to disproportionately divide the community estate in Kristi's favor. Accordingly, we hold that the trial court did not abuse its discretion by doing so. We overrule Anthony's first issue.

## IV. INJUNCTION

In his second issue, Anthony argues that the trial court improperly divested him of his separate-property interest in the residence by permanently enjoining him from ever entering onto the property. The divorce decree awarded Kristi a present possessory interest in Anthony's one-half separate property interest in the residence *until* (1) both children reach the age of eighteen or graduate from high school, whichever occurs later; (2) both children's disabilities are otherwise

6

removed for general purposes; or (3) Kristi ceases to use the property as her primary residence. The injunction, however, prohibits Anthony from, among other things, "[e]ntering onto the premises of the residence . . . without the knowledge and consent of [Kristi]." Thus, unlike Kristi's possessory interest, which ceases upon the occurrence of one of three conditions, Anthony's injunction does not terminate upon the occurrence of anything, including when Kristi's possessory interest ceases. As written, the injunction effectively divested Anthony of his separate property interest in the residence. This is not permitted. *See Cameron v. Cameron*, 641 S.W.2d 210, 215 (Tex. 1982). Kristi agrees with Anthony that we should reform the divorce decree to specify that the injunction ceases when Kristi's possessory interest terminates.[6] We sustain Anthony's second issue.

## V. ATTORNEY'S FEES

Anthony argues in his third issue that the evidence is legally insufficient to support the award of attorney's fees to Kristi.

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a

---

[6]Indeed, Kristi's summary of requested relief at trial asked that Anthony be enjoined from entering onto the premises only "[d]uring the pendency of Petitioner's present possessory interest."

7

mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

An award of attorney's fees must be supported by evidence that the fees were reasonable and necessary. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991); *see also Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (providing that the reasonableness of attorneys' fees is generally a question of fact to be determined by the factfinder).

Here, the only evidence relevant to Kristi's attorney's fees is Petitioner's Exhibit 10. In that exhibit, Kristi requested fees in the amount of $18,568.98.[7] It contains no other information, including details about her attorney's hourly rate, the number of hours spent working on the case, or a description of the services provided, nor did her attorney testify about such matters. Kristi's attorney did not

---

[7]Kristi alternatively requested fees in the amount of $12,913.24.

even conclusorily testify that $18,568.98 was a reasonable and necessary amount of attorney's fees. *Cf. In re M.A.N.M.*, 231 S.W.3d 562, 567–68 (Tex. App.—Dallas 2007, no pet.) (affirming award of attorney's fees where counsel did not testify about his hourly rate or the number of hours spent on the case but did testify that the amount requested was "reasonable and necessary"). Kristi argues that Anthony failed to preserve this issue for appellate review by not objecting to her attorney's fees request, but Anthony can raise this evidentiary-sufficiency issue for the first time on appeal. *See* Tex. R. App. P. 33.1(d). We hold that the evidence is legally insufficient to support the attorney's fees award, and we sustain Anthony's third issue. *See In re A.A.L.*, No. 12-11-00161-CV, 2012 WL 1883763, at *2–3 (Tex. App.—Tyler May 23, 2012, no pet.) (mem. op.) ("Renee's attorney did not testify, nor did he present an affidavit, itemized statements, exhibits, or any other offer of proof, about the reasonableness of his fees.").

## VI. FINDINGS AND CONCLUSIONS

Anthony argues in his fourth issue that the trial court erred by failing to make findings of fact and conclusions of law in conjunction with its decision to deviate from the child support guidelines by using Anthony's potential or future earnings (no less than $48,000 annually) rather than his actual earnings (something less than $48,000 annually) to determine the net resources available to him. *See* Tex. Fam. Code Ann. § 154.130(a) (West 2014). The trial court

9

made the required findings and conclusions in the divorce decree under the section titled, "Statement on Guidelines."  We overrule Anthony's fourth issue.

## VII. CONCLUSION

Having sustained Anthony's second issue, we modify the divorce decree to provide that the permanent injunction against Anthony ceases when Kristi's present possessory interest in Anthony's one-half separate property interest in the residence terminates.  Having sustained Anthony's third issue, we delete the portion of the decree awarding Kristi attorney's fees in the amount of $18,568.98.  As modified, we affirm the trial court's judgment.  *See* Tex. R. App. P. 43.2(b).

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL:  LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DELIVERED:  March 27, 2014